Commonwealth of Pennsylvania, Department of Transportation Hearing Board *v.* Pennsylvania Chiropractic Society, Appellant.

Argued December 4, 1975, before Judges WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN and Judges CRUMLISH, JR., and KRAMER did not participate.

*Gerald H. Goldberg,* for appellant.

*Reynold J. Kosek,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, January 2, 1976:

This is an appeal by the Pennsylvania Chiropractic Society (appellant) from an adjudication by the Hearing Board of the Department of Transportation (Board), dated April 10, 1975. The Board dismissed a petition by appellant seeking a change in Department of Transportation regulations to permit the physical examination of applicants for operator's licenses by doctors of chiropractic.[1] We must affirm.

The Board relied primarily on an able opinion by Judge WOODSIDE in *Howe v. Smith,* 203 Pa. Superior Ct. 212, 199 A.2d 521 (1964), in which it was held that duly licensed doctors of chiropractic are not authorized by Section 2(b) of the Chiropractic Registration Act of 1951, Act of August 10, 1951, P. L. 1182, to perform general diagnostic examinations and are, therefore, unable to generally examine applicants for operator's licenses. Appellent, however, contends that *Howe* is no

---

1. The Secretary of Transportation has discretionary authority to appoint agencies to conduct physical examinations of applicants for operator's licenses under Section 608(g) of The Vehicle Code, Act of April 29, 1959, P. L. 58, *as amended,* 75 P. S. §608(g), which provides:

"The secretary may, in his discretion, require the special examination, by such agencies as the secretary may direct, of any applicant for learner's permit or operator's license, or of any operator, to determine incompetency, physical or mental disability or disease, or any other condition which might prevent such applicant from exercising reasonable and ordinary control over a motor vehicle or tractor."

Presently, the Secretary has by regulation authorized only doctors of medicine and doctors of osteopathy to perform such examinations.

longer the law in view of a 1965 amendment to Section 2(b). Consequently, appellant asserts that the adjudication of the Board cannot stand.

Section 2(b) of the Chiropractic Registration Act of 1951, as interpreted in *Howe* prior to its amendment, provided:

" 'Chiropractic' shall mean a system of locating misaligned or displaced vertebrae of the human spine, the examination preparatory to and the adjustment by hand of such misaligned or displaced vertebrae, and other articulations, together with the use of scientific instruments of analysis, as taught in the approved schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations."

By the Act of December 7, 1965, P. L. 1040, 63 P. S. §602(b), Section 2(b) was amended to its present form which follows:

" 'Chiropractic' shall mean a limited science of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the nervous system and the role of these relationships in the restoration and maintenance of health. It shall include chiropractic diagnosis; a system of locating misaligned or displaced vertebrae of the human spine, and other articulations; the examination preparatory to and the adjustment of such misaligned or displaced vertebrae, and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health and the use of scientific instruments of analysis, as taught in the approved schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations."

It is urged by appellant that Section 2(b), as amended, permits doctors of chiropractic to furnish general health

care which necessarily contemplates the performance of general diagnostic examinations. We cannot agree.

Appellant ignores the language contained in the first sentence of amended Section 2(b) which defines "chiropractic," limiting the scope of that science to "the relationship between the articulations of the vertebral column, as well as other articulations, and the nervous system. . . ."[2] To hold that doctors of chiropractic are able to perform general diagnostic examinations, however, would necessarily expand the scope of chiropractic beyond those statutorily defined limits. Moreover, the specific reference in the section to "chiropractic diagnosis" makes it clear that the Legislature intended the diagnostic range of chiropractic doctors to be confined to matters within the definition of "chiropractic." Consequently, although the 1965 amendment to Section 2(b) apparently broadened the parameters of chiropractic practice, specifically permitting chiropractic diagnosis, it has not conferred the general diagnostic authority contended by appellant.

We hold, therefore, that *Howe* remains good law despite the 1965 amendment to Section 2(b) and thus provides sufficient basis for the Board's dismissal of appellant's petition.

Accordingly, we enter the following

ORDER

NOW, January 2, 1976, the adjudication of the Hearing Board of the Department of Transportation, dated April 10, 1975, dismissing the petition of the Pennsylvania Chiropractic Society, is hereby affirmed.

---

2. An "articulation" is "[t]he structure which unites two bones, usually allowing some movement; the place of junction between two bones, or between several bones, with or without movement: a joint." 1 J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* A-247 (1974).