Commonwealth of Pennsylvania, Department of State *v.* Irwin A. Schatzberg, D.C., Appellant. Commonwealth of Pennsylvania, State Board of Chiropractic Examiners.

Argued February 2, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Gerald H. Goldberg,* for appellant.

*Jeffrey G. Cokin,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

*W.E. Shissler,* with him *Nauman, Smith, Shissler & Hall,* for amicus curiae, Pennsylvania Chiropractic Society.

*John D. Killian,* with him *Killian & Gephart,* for amicus curiae, Life Fellowship of Pennsylvania.

OPINION BY JUDGE ROGERS, March 28, 1977:

This is the appeal of Irwin A. Schatzberg, a doctor of chiropractic, from an adjudication of the State Board of Chiropractic Examiners suspending the appellant's license to practice his profession for a period of two days. The appellant stipulated in this test case that he administered acupuncture[1] in violation of a regulation of the State Board of Chiropractic Examiners. The regulation, which is to be found at 49 Pa. Code §5.3, reads:

> The practice of acupuncture is not within the scope of the practice of a chiropractor under the Chiropractic Registration Act of 1951 (63 P.S. §§601-624). For the purpose of this section, acupuncture means the insertion of acupuncture needles or needle like instruments into any point of the skin.

---

[1] The word acupuncture as used in this opinion means what the root word of its first element demands—acus is Latin for needle. Somehow the parties to this proceeding fell to misusing the word acupuncture to describe a treatment consisting of applying external pressure or electrical impulse at certain locations of patients' bodies. This last described treatment is not forbidden by the regulation here in question, and the propriety of the use of this modality by chiropractors is not in issue in this case. Incidentally, the word modality which is used in both briefs means "any of several agencies used in physical therapy (as diathermy, high frequency currents, or massage)." *Webster's Third New International Dictionary* (1969). While on a lexicologic bent, we add that the root word of the first element of the word chiropractic is *cheir,* Greek for hand.

The appellant, with the support of an amicus curiae, the Pennsylvania Chiropractic Society, contends that the regulation is counter to the statutory definition of chiropractic provided by the General Assembly and that any regulation or statute prohibiting chiropractors from practicing acupuncture unconstitutionally denies them the equal protection of the law. Although the State Board of Chiropractic Examiners decided against the appellant, it did so reluctantly and only because it was required to follow the legal opinion of the Attorney General of Pennsylvania, on whose advice the regulation in question was promulgated. Additional support for the Board's order is, however, provided by an amicus curiae brief filed in behalf of a professional association of licensed practitioners of chiropractics, called Life Fellowship of Pennsylvania, which opposes the practice of acupuncture by chiropractors.

The word chiropractic is defined in Section 2(b) of the Chiropractic Registration Act of 1951,[2] as follows:

'Chiropractic' shall mean a limited science of the healing arts dealing with the relationship between the articulations[3] of the vertebral column, as well as other articulations, and the nervous system and the role of these relationships in the restoration and maintenance of health. It shall include chiropractic diagnosis; a system of locating misaligned or displaced vertebrae of the human spine, and other articulations; the examination preparatory to and the

[2] Act of August 10, 1951, P.L. 1182, as amended, 63 P.S. §602(b).

[3] An "articulation" is "[t]he structure which unites two bones, usually allowing some movement; the place of junction between two bones, or between several bones, with or without movement: a joint." J. Schmidt, Attorney's Dictionary of Medicine and Word Finder, A-247 (1974).

adjustment of such misaligned or displaced vertebrae, and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health and the use of scientific instruments of analysis, as taught in the approved schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations. (Footnote supplied.)

As the regulation at 49 Pa. Code §5.3 says, acupuncture is the procedure of inserting needles into the patient's body. They are inserted to a depth of one-eighth to one-quarter of an inch. The purpose is to cure disease or relieve pain. The origins, theory, and method of acupuncture are set out at length in the opinion in *People v. Amber,* 76 Misc. 2d 267, 349 N.Y.S. 2d 604 (1973). Paraphrasing that material, we note that acupuncture is of ancient Chinese origin and is based on the Chinese medical concept that man is an image of the universe and subject to the same laws. Nature is guided by Tao, the Way, which acts through two energy forces, Yin, female and negative, and Yang, male and positive. The vital essence of the human body is a mixture of Yin and Yang which is conveyed through the body in ducts or meridians which emerge at the surface of the body at certain designated points, at which points vital energy can be influenced by manipulation. The thesis is that by inserting and manipulating needles energy may be supplied where lacking or calmed where present in excess. The appellant admits in his brief that "there is little but speculation on why or how acupuncture works."

Reverting to Section 602(b)'s definition of chiropractic, we note that it first says that chiropractic is "a limited science . . . dealing with the *relationships*

*between the articulations* of the vertebral column, as well as other articulations, *and the nervous system* and the role of *those relationships* in the restoration and maintenance of health." (Emphasis added.) The section goes on to say that chiropractic is a "system of locating *misaligned or displaced vertebrae and articulations*" and includes "examination preparatory to and the adjustment of such *misaligned or displaced vertebrae and other articulations*" and "the furnishing of necessary patient care for the restoration and maintenance of health and the use of scientific instruments of analysis taught in chiropractic schools and colleges." (Emphasis added.) The balance of the section says what is not within the scope of chiropractic; to wit, drugs, surgery, obstetrics, or the reduction of fractures or, indeed, major dislocations. Nothing in the material following the first sentence deviates from or expands its definition of chiropractic science as limited to the relationship between articulations and the nervous system. Nothing in Section 602(b) suggests that chiropractic includes treatment of the nervous system independent of treatment of misaligned or dislocated vertebrae or other articulations. Nothing in this record indicates that acupuncture is, or is intended as, a treatment of misaligned or dislocated vertebrae or articulations. Indeed, the appellant writes in his brief that "it is impossible to state conclusively the effect of acupuncture on misaligned or displaced articulations." Except for the inclusion of the word "conclusively," this is an accurate statement of the only conclusion on this vital point which could be made on the basis of this record.

While the appellant only hints that he may depend on the phrase "the furnishing of necessary patient care for the restoration and maintenance of health"[4]

---

[4] He writes: ". . . the modes of treatment available to a chiropractor include any form of therapy that serves to adjust articula-

as support for the chiropractor's engaging in treatment not relating to articulations, we think it appropriate to note that the quoted phrase does not authorize chiropractors to engage in the general practice of the healing art, which is permitted only those licensed under The Medical Practice Act of 1973,[5] section 17(a)(4), 63 P.S. §421.17(a)(4), of which specifically excludes chiropractic from its application.

Our decision that chiropractors may not practice acupuncture is consistent with the cases of other jurisdictions which have been brought or come to our attention. *Ohio v. Rich,* 44 Ohio St. 2d 195, 339 N.E. 2d 630 (1975); *State of Washington v. Wilson,* 11 Wash. App. 916, 528 P.2d 279 (1974);[6] *Oregon v. Won,* 528 P.2d 594 (Ore. 1974); *People v. Amber, supra.*

The appellant also says that the denial to chiropractors of the right to practice acupuncture is discriminatory and violative of their constitutional guarantee of equal protection. The same complaint was made in *Howe v. Smith,* 203 Pa. Superior Ct. 212, 199 A.2d 521 (1964), concerning the refusal of the Commonwealth's representative to accept certificates from chiropractors concerning physical fitness of certain motor vehicle operators. In rejecting the complainant's argument the Superior Court, while acknowledging as do we, that many chiropractors have extensive knowledge and training, nevertheless concluded that the equation of chiropractors and physicians is not

---

tions, *or which restore or maintain health of the patient,* excluding drugs or surgery." (Emphasis supplied.)

[5] Act of July 20, 1974, P.L. 551, 63 P.S. §421.1 et seq.

[6] This case held that acupuncture was surgery, forbidden to chiropractors. The Attorney General of Pennsylvania reached the same conclusion. However, the medical doctor who testified for the Commonwealth in this case expressed the opinion that acupuncture was not surgery. Since we have decided that acupuncture is not within the general definition of chiropractic, we are not required to decide whether it is surgery.

yet realistic because of a real distinction between them in terms of required education and training, licensing and scope of practice; and that the classification made by the Legislature was constitutional. *See also Pennsylvania Department of Transportation v. Pennsylvania Chiropractic Society*, 22 Pa. Commonwealth Ct. 483, 349 A.2d 509 (1975).

Finally, we discern no public interest requiring that chiropractors practice acupuncture and, indeed, there is evidence in this record that acupuncture can cause immediate and serious medical problems requiring the attention of a physician.

Accordingly, we enter the following

ORDER

AND Now, this 28th day of March, 1977, the order of the State Board of Chiropractic Examiners, dated May 3, 1976, is affirmed and the appeal of Irwin A. Schatzberg is dismissed.

Judge MENCER dissents.