## Christini v. Cumberland, Dauphin, Harrisburg Transit Authority

*Neil J. Rovner*, for plaintiffs.
*Jeffrey B. Rettig*, for defendant.

DOWLING, *J.*, June 15, 1979—Can chiropractors escape from the labyrinth? In attempting to emerge from the mazes, false passages, trap doors and reeking oubliettes of the No-fault Act what can we substitute for the silken thread of Ariadne which guided Thesus to the surface?

A demurrer has entangled these practitioners in the statutory web. The act[1] permits damages for noneconomic detriment[2] if the accident necessitates "medical and dental services" in excess of $750.[3] Plaintiffs have met the quantity but defend-

---

1. Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.

2. "'Noneconomic detriment' means pain, suffering, inconvenience, physical impairment and other nonpecuniary damages recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle. The term does not include punitive or exemplary damages." 40 P.S. §1009.103.

3. 40 P.S. §1009.301.

ant challenges the quality because all moneys were expended for chiropratic services.

It is the act itself, its avowed purpose, its definitions and its overall provisions which supply the umbilical cord.

In section 102 of the No-fault Act the General Assembly stated:

"Findings—The General Assembly hereby finds and declares that: . . . (3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce."

To this end the No-fault Act has provided for the reimbursement of "allowable expense" as defined in section 103 of the act: "'Allowable expense' means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for: (A) professional medical treatment and care; (B) emergency health services; (C) *medical and vocational rehabilitation services*." (Emphasis supplied.)

The terms "medical services" and "vocational rehabilitation services" are defined in the act with rather sweeping terms in keeping with the remedial philosophy of the act.

"'Medical and vocational rehabilitation services' means *services necessary to reduce disability* and to restore the physical, psychological, social, and vocational functioning of a victim. Such services may include, *but are not limited to*, medical care, diagnostic and evaluation procedures, physical and

occupational therapy, *other necessary therapies*, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services." (Emphasis supplied.)

Thus, medical services are not limited to those services provided by medical doctors and osteopathic physicians and surgeons, but also include the services of physical therapists, optometrists, psychologists, speech therapists, etc. Within the four corners of the No-fault Act, the term "medical services" has a particular definition seemingly broad enough to include chiropractic services.

The profession of chiropractic is defined and regulated under the Chiropractic Registration Act of August 10, 1951, P.L. 1182, 63 P.S. §601 et seq. Under section 2 of the act, as amended, 63 P.S. §602, chiropractic is defined as follows:

"'Chiropractic' shall mean a limited science of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the nervous system and the role of these relationships in the restoration and maintenance of health. It shall include chiropractic diagnosis; a system of locating misaligned or displaced vertebrae of the human spine, and other articulations; the examination preparatory to and the adjustment of such misaligned or displaced vertebrae, and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health and the use of scientific instruments of analysis, as taught in the approved

schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations."

Under the broad definition of "allowable expense" and "medical and vocational and rehabilitative services" contained in the act, it is clear that chiropractic bills must be paid by the No-fault carrier on a first party basis. It would be inconsistent and violative of the definitions of the act to provide that chiropractic bills may be reimbursed on a first party basis but may not be counted toward the No-fault threshold. There is no language anywhere in the act which would support such a restrictive and arbitrary distinction.

Defendant relies on a recent lower court decision out of Montgomery County, Babcock v. Tippett, 103 Montg. 110 (1977), where the court reached a contrary position. A reading of the opinion in its entirety, however, discloses that the Montgomery County court relied on decisions which we feel are inapposite to the factual situation in the case at bar. These cases, Howe v. Smith, 203 Pa. Superior Ct. 212, 199 A. 2d 521 (1964); Department of Transportation Hearing Board v. Pennsylvania Chiropractic Society, 22 Pa. Commonwealth Ct. 483, 353 A. 2d 65 (1976); and Department of State v. Schatzberg, 29 Pa. Commonwealth Ct. 426, 371 A. 2d 544 (1977); dealt with chiropractors who attempted to perform services beyond the scope of "chiropractic" as defined in the Chiropractic Registration Act of 1951, supra. None of these cases dealt with the rendering of services which are within the definition of chiropractic.

In any event the demurrer would have to be refused on the allegation of permanent and serious

injury. The exception to the abolishment of tort liability reads in the disjunctive and includes not only situations where the costs of medical services exceeds $750 but also instances of "serious and permanent injury." While the delineation of the injuries in the complaint opens to question their seriousness and permanency we are here dealing with a demurrer and any doubt must be resolved in favor of the plaintiffs.

The extent and duration of any injury can often be the subject of as many different opinions as some of the decisions of the United States Supreme Court. As this matter progresses through discovery and trial and if it becomes clear that the injuries are indeed not serious and permanent then the appropriate remedies, summary judgment or non-suit, are available. We cannot rule as a matter of law at this stage of the proceedings that such a diagnosis is unwarranted.

Accordingly, we enter the following

### ORDER

And now, June 15, 1979, defendant's preliminary objections are dismissed.