493 A.2d 772

**Frances X. FASCIANA, Appellee,**

v.

**AETNA LIFE & CASUALTY COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 18, 1984.

Filed May 31, 1985.

Paul A. Barrett, Scranton, for appellant.

Alan P. Schoen, Scranton, for appellee.

Before WIEAND, DEL SOLE and POPOVICH, JJ.

WIEAND, Judge:

Frances Fasciana sustained fractures of her right femur, right clavicle, left ankle, fibula and tibia as a result of a

vehicular accident occurring on June 26, 1978. Aetna Life & Casualty Co. (Aetna), which had written no-fault insurance coverage for the vehicle which she had been driving, paid work loss benefits and medical benefits, including the cost of physical therapy treatments rendered prior to June 24, 1980. It refused to reimburse her for the cost of physical therapy treatments rendered between June 24, 1980 and October 19, 1982 on grounds that they were not "reasonably necessary." Ms. Fasciana filed this action to recover the cost of such treatments and also to recover counsel fees. Following trial without jury, the court found that she was entitled to recover costs of physical therapy in the amount of $7,037.90, plus interest, and counsel fees in the amount of $2,045.00. Exceptions were dismissed, and judgment was entered on the verdict. Aetna appealed.

■ The Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, § 103, 40 P.S. § 1009.103, specifically allows recovery for "reasonable charges incurred for ... reasonably needed and used products, services, and accommodations for ... medical and vocational rehabilitation services." (emphasis added). Medical and vocational rehabilitation services include physical therapy.

■ The evidence in this case showed that a metal pin previously inserted in appellee's leg had been removed in January, 1980. Dr. Raklewicz, the treating orthopedic surgeon, recommended that appellee return to her work as a secretary. She did not return to work until April, 1980. After three days she complained of pain, swelling, and weakness in her leg, which she attributed to the need to operate a floor button on dictating equipment. She informed Dr. Raklewicz of her complaint, but he declined to examine or treat her further. Appellee's family doctor, who was continuing to treat her, referred her to Geisinger Medical Center for an orthopedic evaluation. There she was examined by Dr. G.L. Wolfgang on June 4, 1980; he also told her that there was nothing further to be done other than for her to exercise and use her limbs. He advised her to return to work and "strongly recommended

that she stop shopping around for physicians and get busy with exercises and physical therapy." Ms. Fasciana sought another medical opinion from Dr. Christopher Metzger. He examined her and prescribed physical therapy. Dr. Metzger did not tell his patient how long to continue physical therapy; and appellee continued such treatments until October 19, 1982. When appellee consulted Dr. Metzger in November, 1980, it was his assessment that she was benefitting from physical therapy; and, therefore, he recommended that it be continued. He told her at that time that he could do nothing further for her and that exercise was the best means for strengthening the leg. He testified that the benefits from therapy had peaked by October, 1982 and that future therapy would serve only to maintain strength in the leg.

This evidence was sufficient to support the finding of the trial court that physical therapy was reasonably necessary in the months preceding November, 1982. It is correct, as appellant contends, that there was conflicting evidence. Dr. Metzger's records contained an entry made in June, 1980, that "there is absolutely nothing further that I would offer or could offer at the present time. . . ." On cross-examination at trial, Dr. Metzger testified regarding physical therapy as follows:

A. In November of 1980, I prescribed it in the sense that I felt that there would be no harm to her continuing physical therapy.

Q. But it wasn't in your opinion reasonable and necessary for her treatment, that is correct, isn't it?

A. That is correct.

Q. If she chose to have physical therapy, your medical opinion wouldn't say it was reasonable and necessary for her to do it?

A. I don't really know how much it would have benefited her, that is correct.

(Record, p. 164a). Subsequently, Dr. Metzger said:

Q. Doctor, yet when you saw her, you indicated you saw her in November of 1980, and at that time she was still

getting physical therapy beyond the two-month period you just indicated; and you have testified that you still felt ... the physical therapy was still serving some need, rehabilitative purpose at that time?

A. Minimal, yes.

Q. But some rehabilitative purposes?

A. Really, it is so difficult to comment on the length of time that physical therapy would have benefited her, because she didn't see me on a regular basis. I did not have correspondence with physical therapists; and perhaps, proper limits, three months or so really would be about all that I would feel that would have helped her. And, the history that she had told me really had not informed me that she had seen these other physicians and was not aware, I guess, of all the treatment that she had or not had, or whatever ... (A)t that point in time, there is no harm in trying but, I have to state it now that I just don't feel it was worth two and one-half years.

Q. You didn't tell her that in November of 1980, though, did you? You didn't tell her to stop therapy?

A. I didn't tell her to stop therapy, no.

Q. So in November of 1980, you were aware that she was getting therapy?

A. Yes, but I did not anticipate something that would have gone on for two and one-half years.

(Record, pp. 168a–170a). This testimony suggests that Dr. Metzger prescribed physical therapy for appellee and did not tell her to stop it until November, 1982, although in retrospect he conceded that maximum physical benefit had probably been achieved within three months of commencement.

Under these circumstances, the trial court found that physical therapy was reasonably necessary. Such a course of treatment had been medically prescribed, and appellee had not been told to discontinue the treatments prior to November, 1982. Both appellee and her therapist testified,

moreover, that there were subjective benefits derived by appellee from the prolonged course of treatment. We cannot say, under these circumstances, that the trial court's finding was wholly unsupported by the evidence.

It seems clear, however, that Aetna's denial of reimbursement for physical therapy treatments after June 24, 1980 was not predicated upon bad faith but, rather, was based upon reasonable foundation. The award of counsel fees, therefore, was error.

Section 107(3) of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.107(3) provides for an award of counsel fees in some actions as follows:

> If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof *without reasonable foundation,* the court may award the claimant's attorney a reasonable fee based upon actual time expended.

(Emphasis supplied). This has been construed by the appellate courts of this state to allow an award of counsel fees only upon proof of bad faith on the part of an insurer in denying the claim. *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 160, 425 A.2d 419, 424 (1981); *Hall v. Midland Insurance Co.,* 320 Pa.Super. 281, 288–289, 467 A.2d 324, 328 (1983); *Shomper v. Aetna Life & Casualty Co.,* 309 Pa.Super. 97, 100, 454 A.2d 1101, 1102 (1982); *Baker v. Aetna Casualty & Surety Co.,* 309 Pa.Super. 81, 92–93, 454 A.2d 1092, 1098 (1982), *overruled on other grounds, Antanovich v. Allstate Insurance Co.,* 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd,* 507 Pa. 68, 488 A.2d 571 (1985).

In the instant case, there were no facts upon which to rest a finding that Aetna's denial of the claim for physical therapy treatments rendered after June 24, 1980 was in bad faith. On the contrary, the history of appellee's treatment, including her examination by three separate orthopedic surgeons all of whom at one time or another challenged her continuing need for treatment, suggests

strongly that appellant was warranted in contesting appellee's claim for almost two and one-half years of physical therapy between June, 1980 and November, 1982.

Remanded for the entry of judgment consistent with the foregoing opinion.

DEL SOLE, J., files a concurring opinion.

DEL SOLE, Judge, concurring:

I join the majority in its affirmance of the trial court's finding that the physical therapy charges are recoverable against the no-fault carrier. Further, I concur in the result reached in reversing the trial court on the issue of counsel fees under the no-fault act. However, I write separately to express my view that the test of recoverability of counsel fees based upon 40 P.S. § 1009.107(3) does not require a showing of bad faith on the part of the carrier to make it responsible for counsel fees, only that its action in denying benefits was unreasonable. I agree with the majority opinion that the actions of the carrier in this case in denying the payment of benefits were not unreasonable and therefore concur in the result that counsel fees are not recoverable herein.