500 A.2d 1151

**ALLSTATE INSURANCE COMPANY, Appellant,**

v.

**Pamela G. WILLIAMS, Cynthia Nairn and Mary Zotis on Behalf of Themselves and Other Members of a Class Similarly Situated, Appellees.**

Superior Court of Pennsylvania.

Argued March 26, 1985.

Filed Nov. 15, 1985.

John A. Crittenden, Pittsburgh, for appellant.

Richard C. Schomaker, Pittsburgh, for appellees.

PER CURIAM:

The sole issue presented by this appeal is whether appellees, possessing valid automobile insurance policies issued pursuant to the Pennsylvania No-Fault Motor Vehicle Insurance Act ["No-fault Act"],[1] may recover, as accident related expenses, for services in the nature of physical therapy provided by doctors of chiropractic.

On November 22, 1983, appellees filed a complaint in class action for declaratory judgment and equitable relief in the Court of Common Pleas of Allegheny County. By an order dated February 24, 1984, the court below sustained four of appellant's preliminary objections and directed appellees to file an amended complaint setting forth more specifically their claim with regard to physically therapeutic services.

On March 23, 1984, appellees filed an amended class action complaint in assumpsit and for declaratory judgment.

1. Act of July 19, 1974, P.L. 489, No. 176, arts. I–VII, §§ 101–701, 40 P.S. §§ 1009.101–701 (repealed).

At paragraph three of this complaint, appellees asserted the following:

3. The plaintiffs [appellees] bring this action on behalf of themselves and as representatives of a class of the defendant's insureds to recover money due them, wherein defendant, pursuant to its standard no-fault insurance policy, has failed to pay certain medical expense claims, or, more specifically, those bills pertaining to therapy or treatments in the nature of physical therapy from doctors of chiropractic.

'Therapy' or 'treatment(s) in the nature of physical therapy' from doctors of chiropractic for purposes of this complaint shall mean and include hotpack applications, coldpack applications, massage, mechanical stimulation, electrical stimulation, traction, theraputic [sic] devices, ultrasound and/or other modalities of treatment encompassed within the definition of physical therapy as set forth in the Physical Therapy Practice Act of 63 Pa.Stat. Ann. § 1302, provided in association with other chiropractic care, under the supervision/direction of a licensed chiropractor (as opposed to a licensed physical therapist) and in connection with care of a spinal injury.

On April 13, 1984, appellant filed a preliminary objection in the nature of a demurrer to appellees' amended complaint.

Following discovery, the taking of depositions, the filing of extensive briefs, a hearing, and the agreement of counsel to a limited stipulation, the court below dismissed appellant's preliminary objection on June 12, 1984. Thereafter, in response to a motion by appellant, the court below amended its June 12, 1984 order to include a paragraph certifying its interlocutory ruling for immediate appeal and staying any further proceedings below pending appeal. On September 26, 1984, this court granted appellant's petition for permission to appeal an interlocutory order.

■ Initially, we note that, in attempting to ascertain and implement the pertinent legislative intent behind the No-Fault Act in close cases, courts must err, if at all, in favor of extending coverage to insureds. *See Steppling v. Penn-*

*sylvania Manufacturers' Association Insurance Company,* 328 Pa.Super. 419, 477 A.2d 515 (1984); *Bills v. Nationwide Mutual Insurance Company,* 317 Pa.Super. 188, 463 A.2d 1148 (1983). Furthermore, one of the legislature's avowed purposes in enacting the No-fault Act was to establish "a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims ...". 40 P.S. § 1009.102(b).

"Loss", for the purpose of calculating an insured's recovery pursuant to the No-fault Act, was defined as "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, *allowable expense,* work loss, replacement services loss, and survivor's loss." 40 P.S. § 1009.103 (emphasis supplied). Section 103 defined "allowable expense" in pertinent part as:

> reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:
>
> (A) professional medical treatment and care;
>
>    \*    \*    \*    \*    \*    \*
>
> (C) medical and vocational rehabilitation services;
>
>    \*    \*    \*    \*    \*    \*

In addition, by way of further definitional clarity, section 103 defined "medical and vocational rehabilitation services" as:

> services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services. A basic loss

obligor is not obligated to provide basic loss benefits for allowable expense for medical and vocational rehabilitation services unless the facility in which or through which such services are provided has been accredited by the Department of Health, the equivalent governmental agency responsible for health programs, or the accrediting designee of such department or agency of the state in which such services are provided, as being in accordance with applicable requirements and regulations.

In *Miller v. Johnson,* 496 Pa. 290, 436 A.2d 1187 (1981), our supreme court observed:

> *There can be no serious question that chiropractic expenses can be recovered under the 'allowable expenses' component of 'basic loss benefits' under the No-Fault Act.* Section 103 provides that 'allowable expenses' include 'medical and vocational rehabilitation services,' defined as 'services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim.' Section 103 further provides that these services 'may include, but are not limited to ...' the following:
>
>> 'medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services.'

*Id.*, 496 Pa. at 294–95, 436 A.2d at 1189 (emphasis supplied).

Accepting that an insured may recover necessary chiropractic expenses as "allowable expenses" pursuant to the No-fault Act, the issue before us becomes whether doctors of chiropractic may indeed provide services in the nature of physical therapy, recoverable as chiropractic expenses.

As set forth in the Chiropractic Registration Act [Chiropractic Act][2] at section 602(b), "chiropractic" is described as:

> *a limited science of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the nervous system and the role of these relationships in the restoration and maintenance of health.* It shall include chiropractic diagnosis; a system of locating misaligned or displaced vertebrae of the human spine, and other articulations; the examination preparatory to the adjustment of such misaligned or displaced vertebrae, and other articulations; *the furnishing of necessary patient care for the restoration and maintenance of health* and the use of scientific instruments of analysis, as taught in the approved schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations.

(emphasis supplied). In dismissing appellant's preliminary objection and therefore finding that chiropractors may perform physical therapy, the court below relied upon this rather broad definition of "chiropractic", encompassing "the furnishing of necessary patient care for the restoration and maintenance of health ...".

Both appellant and *amicus curiae*, the Pennsylvania Physical Therapy Association, in their briefs to this court, direct our attention to *Commonwealth, Department of State v. Schatzberg*, 29 Pa.Commw. 426, 371 A.2d 544 (1977).

In *Schatzberg*, our commonwealth court upheld regulations forbidding licensed chiropractors from performing acupuncture. Interpreting section 602(b)'s definition of "chiropractic", the court found that acupuncture was a procedure beyond the professional bounds of those licensed in chiropractic. The court specifically noted, "Nothing in this record indicates that acupuncture is, or is intended as, a

**2.** Act of August 10, 1951, P.L. 1182, §§ 1 *et seq., as amended,* 63 P.S. §§ 601 *et seq.*

treatment of misaligned or dislocated vertebrae or articulations." *Id.* at 431, 371 A.2d at 546–47. As alleged in appellees' amended complaint, the procedures at issue in the case *sub judice,* collectively labeled "physical therapy", were provided "in connection with [the] care of ... spinal injur[ies]." We therefore find *Schatzberg* to be factually inapposite to this case.

Nevertheless, appellant and *amicus curiae* rely on the following language in *Schatzberg.*

> While the appellant only hints that he may depend on the phrase 'the furnishing of necessary patient care for the restoration and maintenance of health' as support for the chiropractor's engaging in treatment not relating to articulations, we think it appropriate to note that the quoted phrase does not authorize chiropractors to engage in the general practice of the healing art, which is permitted only those licensed under The Medical Practice Act of 1973, section 17(a)(4), 63 P.S. § 421.17(a)(4), of which specifically excludes chiropractic from its application.

*Id.* at 431–32, 371 A.2d at 547 (footnotes omitted). They contend that, since section 602(b)'s definition of "chiropractic" may not be read so expansively as to encompass practices uniquely within the professional sphere of physicians licensed to practice medicine and surgery, section 602(b)'s definition similarly should not be read to subsume the practice of licensees under the Physical Therapy Practice Act [Physical Therapy Act].[3]

In responding to this argument, we find two considerations to be of particular significance. First, there are both qualitative and quantitative differences between the training and licensing requirements of physical therapists, chiropractors, and physicians. Clearly, the court's concern in *Schatzberg* was with protecting the public from those members of the chiropractic profession who offer and perform

---

**3.** Act of October 10, 1975, P.L. 383, §§ 1 *et seq., as amended,* 63 P.S. §§ 1301 *et seq.*

general acupuncture for which they are unlicensed and which may only be offered or performed by physicians due to their more extensive training and testing. *See also Commonwealth, Department of Transportation Hearing Board v. Pennsylvania Chiropractic Society*, 22 Pa. Commw. 483, 349 A.2d 509 (1976). An attempt to extrapolate from this rationale a general prohibition against the performance of physically therapeutic techniques by licensed chiropractors is, in our view, tenuous. Second, a holding in favor of appellees herein does not mandate the subsumption of the practice of physical therapy into the practice of chiropractic in that chiropractic remains a limited science dealing with the treatment of misaligned or dislocated vertebrae or articulations and the related treatment of the nervous system. *See Schatzberg, supra.*

The Physical Therapy Act defines "physical therapy" as:

the evaluation and treatment of any person by the utilization of the effective properties of physical measures such as mechanical stimulation, heat, cold, light, air, water, electricity, sound, massage, mobilization and the use of therapeutic exercises and rehabilitative procedures including training in functional activities, with or without assistive devices, for the purpose of limiting or preventing disability and alleviating or correcting any physical or mental conditions, and the performance of tests and measurements as an aid in diagnosis or evaluation of function.

63 P.S. § 1302.[1] The Act further provides, "Nothing in this act, however, shall prohibit any person trained and licensed or certified to practice or to act within the scope of his certification in this State under any other law, from engaging in the licensed or certified practice for which he is trained." *Id.* § 1304(a). We view this provision as anticipating that certain modalities of physical therapy are neces-

4. As aforementioned, appellees admit in their amended complaint that the services provided by their chiropractors, for which recovery is sought, fall within this definition of "physical therapy".

sarily employed in the proper performance of other health related practices, *i.e.,* medicine and chiropractic.

Section 1304(b.1) of the Physical Therapy Act states:

It shall be a violation of this act for any person or business entity to utilize in connection with a business name or activity the words 'physical therapy,' 'physical therapist,' 'physiotherapy,' 'physiotherapist' or similar words and their related abbreviations which imply directly or indirectly that physical therapy services are being provided, including the billing of physical therapy services, unless such services are provided by a licensed physical therapist in accordance with this act. *Provided, however, That nothing in this section shall limit a physician's authority to practice medicine or to bill for such practice nor limit a chiropractor's authority to practice chiropractic or to bill for such practice.*

(emphasis supplied). After quoting these provisions, appellant states, in its brief, "Clearly the Pennsylvania Legislature did not perceive a great deal of overlap between physical therapy and chiropractic; rather it viewed them as two separate disciplines." Appellant's brief at 32. Quite to the contrary however, we view the legislature's inclusion of the specific proviso in section 1304(b.1) as designed to relax any perceived restriction on physicians' and chiropractors' utilization of necessary physically therapeutic treatments.

We find that a plain reading of the Chiropractic Act in conjunction with the Physical Therapy Act is conclusive as to the issue before us. In treating misaligned or dislocated vertebrae or articulations and related conditions of the nervous system, licensed chiropractors are clearly authorized to utilize, as necessary patient care, modalities of treatment properly defined as "physical therapy". Accordingly, we hold that the physical therapy provided to appellees in connection with their spinal injuries constitutes an allowable chiropractic expense recoverable pursuant to the No-fault Act.

Order affirmed.