## Hamberger v. Erie Insurance Co.

*David L. Lutz,* for plaintiffs.
*Thomas E. Brenner,* for defendant.

HESS, *J.,* August 8, 1992—This action arises from a petition for relief filed by the defendant, Erie Insurance Exchange. In our order of April 9, 1992, we directed Erie Insurance Exchange to pay for 24 hours of in-home nursing care each day for the plaintiff, Kim B. Hamberger. The defendant now requests that we enter an order fixing the limit of the amount to be paid for in-home care not to exceed an average for such care if provided in a nursing home.

We have had a number of hearings in this matter and have dealt with the facts on previous occasions. They can be summarized as follows:

(1) More than ten years ago, the plaintiff, Kim B. Hamberger, was catastrophically injured in an automobile accident.

(2) At the time of the accident, the plaintiff was insured under an Erie Insurance policy in accordance with the provisions of the Pennsylvania No-Fault Motor Vehicle Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. (now repealed).

(3) Erie Insurance Exchange is presently paying for 24 hours of in-home nursing care each day for the plaintiff at a cost of approximately $15,000 per month.

(4) Institutionalizing the plaintiff in a nursing home would cost approximately $3,000 per month for a semi-private room or between approximately $4,500 and $5,500 per month for a private room.

(5) The optimal setting for Kim B. Hamberger is in his home where he not only has nursing care and therapy but the constant companionship and stimulation of his family.

## DISCUSSION

The issue in this case is whether, given the alternative of nursing home care, the plaintiff's 24-hour-per-day in-home nursing care constitutes an "allowable expense" under section 103 of the now repealed Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. §109.101 et seq. In section 103 of the No-Fault Act, "allowable expense" is defined and requires an insurance carrier to pay reasonable charges for reasonably needed care. While we are cognizant of the substantial sums that the defendant must expend for the plaintiff's in-home care, we conclude

that the plaintiff's in-home care constitutes reasonably needed care at a reasonable cost.

Section 103 of the No-Fault Act does not explicitly define what constitutes reasonable costs incurred for reasonably needed medical care, however, the findings of the General Assembly which led to the passage of the No-Fault Act are instructive.

Section 102(a)(3) provides:

"(3) *The maximum feasible restoration of all individuals injured* and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce." (emphasis added)

Section 102(a)(9) provides:

"(9) A statewide low-cost, comprehensive and fair system of compensating and restoring motor vehicle accident victims can save and restore the lives of countless victims by providing and paying the cost of services so that *every victim* has the opportunity to:

"(A) receive prompt and *comprehensive professional treatment;* and

"(B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen." (emphasis added)

Consequently, the comprehensive care and maximum rehabilitation of injured individuals constitute major goals of the No-Fault Act. In addition, Pennsylvania courts have consistently held that in close cases involving the No-Fault Act, courts must err, if at all, in favor of extending coverage to insureds. See e.g., *Allstate Insurance Co. v. Williams,* 347 Pa. Super. 468, 500 A.2d 1151 (1985);

*Drake, Estate of Fertig v. Pennsylvania Nat. Mut. Casualty Insurance Co.,* 529 Pa. 44, 601 A.2d 797 (1992).

In considering the specific issue in this case of what constitutes reasonably needed care at a reasonable cost, we have been unable to find authority factually on point. However, we find the case of *Fasciana v. Aetna Life & Casualty Co.* quite instructive. 343 Pa. Super. 1, 493 A.2d 772 (1985). In *Fasciana,* the plaintiff was injured in a vehicular accident and sought to recover the cost of two and one-half years of physical therapy treatments through her no-fault insurance policy. At trial, the plaintiff's physician, who had initially prescribed the physical therapy, conceded that the maximum physical benefit had likely been achieved within three months of the commencement of the therapy. *Id.* at 5, 493 A.2d at 774. Although the physician had never told the plaintiff to stop the physical therapy, he testified that he never anticipated the therapy would continue so long. *Id.* The trial court ruled that the full two and one-half years of therapy were reasonably necessary and must be paid by the defendant insurer pursuant to the no-fault policy. In upholding the trial court's decision, the Pennsylvania Superior Court noted that the physical therapy treatment had been medically prescribed. *Id.* Moreover, the court observed that the physical therapy was reasonably necessary based upon the fact that "there were subjective benefits derived by the appellee from the prolonged course of treatment." *Id.* at 6, 493 A.2d at 774.

In the instant case, there is compelling and uncontroverted testimony from the plaintiff's physician, Dr. Michael Dobish, that in-home care is necessary in order for the plaintiff to continue progressing both mentally and physically. Dr. Dobish has testified that the plaintiff has made slow but steady progress that has exceeded what Dr. Dobish ever thought was possible. Dr. Dobish

has also stated that the plaintiff receives support from his family "going above and beyond the call of duty." (N.T. of Hearing of Nov. 28, 1990, p. 11). In fact, Dr. Dobish attributes the plaintiff's unanticipated degree of progress to the involvement and support of the plaintiff's family.

Dr. Dobish has also testified that in-home care is much more beneficial to Mr. Hamberger than institutional care. In this regard, Dr. Dobish has stated:

"I think it is much more beneficial for him to be at home, because he is leading a life with family and friends. If he was in an institution still, I believe we would probably be back with some similar circumstances of when I had first seen him.

"I think that the stimulation he gets in the home environment is what keeps him where he is and keeps him progressing. Without that almost, you know, 24-hour, 16-hour stimulation, which you won't get in an institution, no matter how good the institution is, you are not getting that same family stimulation, friend stimulation that you get at home." N.T. of Hearing of Nov. 28, 1990, pp. 11, 12.

In addition, Dr. Dobish has testified:

"I think if Kim winds up back in an institution, the gains that we have made, we're going to lose some of those gains, because he's not going to get the stimulation in an institution, no matter how good the institution is, that he is getting at home." N.T. of Hearing of March 26, 1992, p. 14.

Furthermore, Dr. Dobish has stated that constant stimulation is necessary to continue the plaintiff's progress. Dr. Dobish has warned that the failure to continue maximal stimulation will result in a deterioration of the plaintiff's condition. In this regard, he testified:

"Well, I think if we don't continue with the maximal stimulation and intensive therapies, we are going to start to get tight muscles again. And so we are going to lose our ability to maneuver, for him to do things on his own as some of the things that he is doing.

"And in addition, once you start to get that, you don't have the stimulation, what brain cells are left, we are going to lose some of his mental capacity that we have regained. And I do feel we have regained some." N.T. of Hearing of Nov. 28, 1990, pp. 15, 16.

Consequently, there is compelling, uncontradicted testimony from Kim Hamberger's physician of over ten years indicating that in-home care is required in order for Mr. Hamberger to continue his progress and avoid regression. As such, the plaintiff's in-home nursing care certainly constitutes the "comprehensive professional treatment" to achieve the "maximum feasible restoration" envisioned by the General Assembly in drafting the No-Fault Act. 40 P.S. §109.102. Moreover, similar to *Fasciana*, the plaintiff's care has been prescribed by a physician. Also, Mr. Hamberger's in-home care has not only yielded subjective benefits as in *Fasciana* but has also yielded tangible benefits in terms of increased physical and mental capacity on the part of the plaintiff.

While we acknowledge that the plaintiff's in-home care is quite expensive, this alone does not mean that the cost is unreasonable. The $15,000 per month that the defendant is paying for the plaintiff's care simply provides the care of a licensed practical nurse 24 hours per day. The plaintiff is not being indulged with expensive specialists or complex machinery. In fact, the defendant is not even being billed for the cost of a registered nurse. The fact that the cost of providing 24-hour-per-day nursing care to the plaintiff is so expensive is attributable to the

high cost of the health care itself and not to the unreasonableness or excessiveness of this care.

## ORDER

And now, August 4, 1992, after hearing, the petition of Erie Insurance Exchange for relief is denied.