605 So.2d 911 (1992)
Alice Faye WELDON, Appellant,
v.
ALL AMERICAN LIFE INSURANCE COMPANY, Appellee.
No. 91-01884.
District Court of Appeal of Florida, Second District.
September 11, 1992.
William J. Corda of Benefield & Corda, Lakeland, and Adam Lawrence of Lawrence & Daniels, Miami, for appellant.
*912 Steven L. Brannock, Fred J. Lotterhos, and Stacy D. Blank of Holland & Knight, Tampa, for appellee.
Mark M. Carroll of Caldwell & Carroll, P.A., Miami, for intervenor, Chiropractic Legal Affairs.
Paul Watson Lambert, Tallahassee, for Intervenor, Florida Chiropractic Ass'n, Inc.
Mort Morris of Morris & Green, Hollywood, for amicus curiae, Florida Osteopathic Medical Ass'n, Inc.
SCHOONOVER, Judge.
The appellant, Alice Faye Weldon, challenges a final judgment entered in favor of the appellee, All American Life Insurance Company (All American). Although we agree with the trial court's determination that a limitation of coverage clause in All American's insurance policy is valid, the court erred in interpreting that clause. We, accordingly, reverse and remand for further proceedings.
The appellant enrolled her daughter, Amy, in The Miss Florida Softball Tournament. Part of the $25 enrollment fee was used to provide accident insurance to each of the participants in the tournament. All American provided this coverage to the sponsors of the tournament.
After Amy was injured while playing in a Miss Florida Softball Game, her mother took her to Dr. Dane Parker, a chiropractic physician, for treatment. Dr. Parker diagnosed Amy's injuries as an acute traumatic sprained shoulder, a contused jaw, and a strained hyperextended back. In addition to the initial visit when Amy's injuries were diagnosed, she visited the doctor on nineteen other occasions. On each visit, Dr. Parker performed a chiropractic adjustment on Amy's back and on nine of the visits this adjustment was accompanied by physical therapy to the back or shoulder, or both. These physical therapy treatments consisted of either ultrasound, traction, or electrical stimulation. All American took the position that manipulation and adjustment were included in its policy definition of physical therapy. Based upon that position, and because of a policy benefit limitation clause in regard to physical therapy, it refused to pay for more than five of Amy's nineteen visits to Dr. Parker.
After All American refused to pay $418 of Dr. Parker's charges, the appellant filed an action in the County Court in and for Polk County, Florida. The appellant evidently accepted All American's position concerning the policy definition of physical therapy but claimed that the exclusion provision, as so defined, discriminated against chiropractic physicians in violation of section 627.419(4), Florida Statutes (1987). All American answered the complaint and counterclaimed seeking a declaratory judgment that its policy did not violate the statute. It also, as an affirmative defense, contended that if the policy was found to violate the statute, the statute was then unconstitutional as applied.[1] Because of the counterclaim, the action was transferred to the circuit court. Chiropractic Legal Affairs and The Florida Chiropractic Association, Inc., were allowed to intervene in support of the appellant's position.
At the conclusion of a nonjury trial, the trial court found that the appellee's insurance policy did not unfairly discriminate against chiropractors as a class of physicians and entered a final judgment in favor of All American. This timely appeal followed.
Appellant raises the question of whether two provisions of All American's insurance policy violate section 627.419(4). First, the policy provides that wherever used in the policy "`Physical Therapy' means any form of physical therapy, whether by machine or hand, by use of exercise, manipulation, massage, adjustment, heat or cold, air, light, water, electricity or sound." Next, the policy contains several expense benefit limitations, one of which reads: "(d) For diathermy, ultrasonic, whirlpool or heat treatments, adjustment, manipulation, massage, or any form of physical therapy and or office visit connected therewith, benefits *913 shall be limited to $n/a for each treatment not to exceed five treatments."
All American contends the use of the words "manipulation" and "adjustment" in its definition of physical therapy mean that chiropractic spinal manipulation or spinal adjustment is part of physical therapy under the policy, and therefore, payment for those services is limited to five treatments. The appellant, on the other hand, contends that spinal manipulation or spinal adjustment is not physical therapy and the policy therefore limits not only treatments for physical therapy but also for chiropractic treatments. She argues that since manipulation is the usual and customary treatment of chiropractic physicians when treating strains and sprains such as received by Amy Weldon, the limitation does not apply equally to all physicians and discriminates against chiropractors as a class of physicians in violation of section 627.419(4). That section provides:
(4) Notwithstanding any other provision of law, when any health insurance policy, health care services plan, or other contract provides for the payment for medical expense benefits or procedures, such policy, plan, or contract shall be construed to include payment to a chiropractic physician who provides the medical service benefits or procedures which are within the scope of a chiropractic physician's license. Any limitation or condition placed upon payment to, or upon services, diagnosis, or treatment by, any licensed physician shall apply equally to all licensed physicians without unfair discrimination to the usual and customary treatment procedures of any class of physicians.
The claims adjuster who originally handled the appellant's claim determined that under All American's policy, physical therapy included chiropractic manipulations or adjustments, and therefore, the limitation of payment for five treatments applied. At trial, All American's representatives testified that manipulation and adjustment referred to spinal manipulation or spinal adjustment and, therefore, payment for such treatment was limited. The appellant apparently accepted this definition of those words and then argued the policy unfairly discriminated against chiropractic physicians. The trial court also found that the policy definition of physical therapy clearly encompasses chiropractic manipulation or adjustment (as well as manipulative therapy performed by an osteopathic physician.)
If we assume that the words "manipulation" or "adjustment" contained in the policy refer to chiropractic manipulation or adjustment of the spine, the trial court properly proceeded to determine whether the policy unfairly discriminated against chiropractic physicians. The trial court relying on State Dep't of Ins. v. Ins. Servs. Office, 434 So.2d 908 (Fla. 1st DCA 1983), pet. for rev. denied by 444 So.2d 416 (Fla. 1984), held that if there is a rational basis for discrimination it is not unfair and that in order to find that there is rational basis for a limitation, the court must find that the limitation is actuarially sound. The court made specific findings that the policy was an excess policy for a term of one year, the total premium to provide coverage for over 1000 participants was $2879.40, the typical injury for which claims are made is a strain or sprain, and the typical treatments utilized for strains and sprains are the treatments which are subject to the five treatment limitations in the policy.[2] The court also found that the selection of the number five was based on claims experience showing five treatments or less to be the norm and also in recognition of the need to limit treatments that may be needed on a frequent basis over a long period of time, in some cases, in order to keep the premium low.
The court then held that there was a rational basis for including manipulation and adjustment in the treatment modalities that are subject to the policy limitation and a rational basis for imposing a five treatment limitation. The court concluded by *914 stating that given the type of policy, the scope of coverage, the premium paid, and the actuarial basis for the limitations, the policy does not unfairly discriminate against chiropractors as a class of physicians.
If we were to accept the definitions advanced by the appellee and the court, we would have to determine whether the above findings and the other evidence in the record supported the court's holding. See, e.g., Guarantee Trust Life Ins. Co. v. Gavin, 882 F.2d 178 (5th Cir.1989); Sandefur v. Cherry, 718 F.2d 682 (5th Cir.1983); Chiropractic Ass'n v. State of Louisiana, 595 So.2d 316 (La. App. 1st Cir.1991). Since we disagree with this interpretation, we need not reach that determination.
All American has always taken the position that the limitation of benefits clause in its policy is a limit on physical therapy. Even though there was no evidence concerning the drafting of the policy, All American's representatives all testified that the words manipulation and adjustment mean spinal manipulation or adjustment. Based upon this interpretation of those words, they concluded and now contend that their definition of physical therapy includes chiropractic practice. If this position was correct, we would have to determine, as discussed above, if the policy unfairly discriminated against chiropractic physicians. However, since we do not accept this interpretation of the policy we do not have to make that determination.
Where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with the reference to the statute and the statutory provisions become a part of the contract. Standard Marine Ins. Co. v. Allyn, 333 So.2d 497 (Fla. 1st DCA 1976). All American's policy provides that any provision of the policy which, on its effective date, is in conflict with the statutes of the state in which the policyholder is located on such date is hereby amended to conform to the minimum requirements. Although section 627.419(4) was not in existence at the time All American's policy form was approved in the state of Florida, approval had been renewed after the statute was passed and was part of Florida's statutory law at the time the policy became effective between All American and Amy Weldon. We must, therefore, construe the policy in light of that statute. See United States Fire Ins. Co. v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977). Under this court's interpretation of the policy, section 627.419(4) is not involved and the question of unfair discrimination is removed from our consideration.
We find that the policy limitation only limits physical therapy treatments conducted with manipulation or adjustment and that the word "spinal" cannot, and should not, be added to the words "manipulation" or "adjustment." When the word is not included, the definition of physical therapy not only conforms to chapter 486 dealing with physical therapists but also results in distinguishing two distinct areas of expertise. The scope of practice of each is defined by statute and summarized in the Florida Health Care Atlas. Just as a physical therapist cannot practice chiropractics, § 486.021(11), Fla. Stat. (1987), a chiropractor may not practice physical therapy without first being certified. § 460.403(3)(f), Fla. Stat. (1987).
Where a clause in an insurance contract is unambiguous the language requires no special construction and should be given the meaning which it clearly expresses. Allison v. Imperial Casualty & Indemnity Co., 222 So.2d 254 (Fla. 4th DCA 1969). All American contends that the words "manipulation" and "adjustment" are unambiguous references to chiropractic manipulation and chiropractic adjustment. In the context of an insurance company attempting to limit payments to chiropractic physicians for services they perform it may be a logical interpretation. However, in the context of defining physical therapy treatments by a physical therapist who cannot perform chiropractic manipulations under any circumstances, the language does not allow us to conclude that the meaning advanced by All American is clearly expressed in the policy. Expert *915 testimony at the trial of this matter indicates that physical therapists can perform some manipulation of extremities under the direction of a physician, that medical doctors manipulate frozen shoulders and perform manipulations when setting fractures, and chiropractors and osteopaths manipulate in their everyday practice. Although an ambiguity is not invariably present when analysis is necessary to interpret a policy, when the terms make the contract subject to different reasonable interpretations, one of coverage and one of exclusion, as in this case, an ambiguity does exist. Blue Shield of Florida, Inc. v. Woodlief, 359 So.2d 883 (Fla. 1st DCA 1978).
We must, accordingly, construe the words manipulation and adjustment and in doing so we consider that the limitations provision relates to the distinct expertise of physical therapy performed by manipulation or adjustment. Since an insurer, as draftsman of the form policy, will not be allowed to use obscure terms to defeat the purpose for which a policy is purchased, the terms must be liberally construed in favor of coverage so that where two interpretations are available the one allowing greater indemnity will prevail. Braley v. American Home Assurance Co., 354 So.2d 904 (Fla. 2d DCA), cert. denied, 359 So.2d 1210 (Fla. 1978); Woodlief.
Furthermore, in construing contracts of insurance we must apply a construction that is practical and reasonable as well as just. Allison. After considering that the limitation clause relates to physical therapy, that Florida law clearly distinguishes that practice from the practice of any form of medicine and that when two interpretations are available, the one allowing greater indemnity will prevail, we construe the policy limitation relating to physical therapy treatments, to limit manipulation and adjustment performed by physical therapists, but not to limit nonphysical therapist manipulations or adjustments performed by physicians. This results in a construction of the policy that is practical and reasonable as well as just. Allison.
Our interpretation of All American's insurance policy does not require that All American pay the entire $418 sought by the appellant. The parties agree that Dr. Parker's treatments were medically necessary and the charges were reasonable. The doctor should be reimbursed for that portion of the bill which relates to the chiropractic manipulations he performed and the office visits in connection therewith. The physical therapy performed in connection with the chiropractic adjustments is not, however, part of those manipulations and must be treated separately. See Metoyer v. Woodward, 338 S.E.2d 286 (Ga. App. 1985). See also Allstate Ins. Co. v. Williams, 347 Pa.Super. 468, 500 A.2d 1151 (1985). Upon remand, the trial court should enter a judgment for the appellant in an amount necessary to reimburse her for Dr. Parker's chiropractic adjustments and five physical therapy treatments given in connection with those treatments.
Reversed and remanded with instructions.
CAMPBELL, A.C.J., and HALL, J., concur.
NOTES
[1] Since we find that the policy, when properly interpreted, does not violate section 627.419(4) we will not discuss its constitutionality in this opinion.
[2] The Florida Chiropractic Association lists the most typically used treatments for strains or sprains as muscle relaxants (drugs), traction, manipulation, physical therapy modalities (heat, ultrasound, etc.) and vertebral adjustment.