595 So.2d 316 (1991)
CHIROPRACTIC ASSOCIATION OF LOUISIANA, et al.
v.
STATE of Louisiana, through the BOARD OF TRUSTEES OF the STATE EMPLOYEES GROUP BENEFITS PROGRAM.
No. 90 CA 1514.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
Rehearing Denied March 13, 1992.
John R. Martzell, Jane Booth, New Orleans, for plaintiff-appellee Chiropractic Ass'n of La.
Thomas D. Benoit, Baton Rouge, for defendant-appellant Bd. of Trustees, State Employees Group Benefits Program.
Before SHORTESS, SAVOIE, and CRAIN, JJ.
SHORTESS, Judge.
On September 6, 1984, the Chiropractic Association of Louisiana (plaintiff)[1] filed a Petition for Declaratory Judgment and Injunctive Relief and named as defendants the State of Louisiana, through the Board of Trustees of the State Employees Group Benefits Program (Board). The suit focused on the adoption by the Board of Trustees of a state health benefits program (the plan) which allegedly discriminated against persons utilizing the services of chiropractors in Louisiana and against licensed Louisiana chiropractors.
After a trial on the merits, the trial court rendered judgment in favor of plaintiff and issued an injunction permanently enjoining defendant from restricting payment of claims for chiropractic services on the basis of Article 3, Paragraph G, Subsection 24 (Paragraph G) of the plan which provides that:
Outpatient treatment in connection with the detection or correction by manual or mechanical means of structural imbalance, distortion or subluxation in the human body for purposes of removing nerve interference when such interference is a result of or related to distortion, misalignment, or subluxation of or in the vertebral column, with the following limitations: The Program will pay 80 percent of eligible charges incurred, said charges not to exceed $100 for any Covered Person per calendar month.
The trial court found the plan by its terms and in its administration violated LSA-R.S. 22:668, R.S. 42:851.2, and R.S. 40:1299.65. *317 Moreover, the trial court found that certain in-house rules adopted to administer the plan were not promulgated in accordance with LSA-R.S. 49:951(6) of the Louisiana Administrative Procedures Act.
Defendant timely appealed, assigning as error the following:
1. The District Court erred in overruling defendant's objections and allowing plaintiffs to adduce testimony and introduce evidence irrelevant to an[d] beyond the scope of the issues for trial.
2. The District Court erred in finding Article 3, Section I(G)(24) of the State Employees Group Benefits Plan discriminatory by its terms and administered in violation of La.R.S. 22:668, 42:851.2, and 40:1299.65.
3. The District Court erred in finding that the State Employees Group Benefits Program has been administered without its rules being properly promulgated in accordance with the Administrative Procedures Act.

ANALYSIS
Since 1974 when chiropractic became a legitimate health care profession in Louisiana, the legislature has enacted several statutes mandating equal treatment for chiropractors.
In 1975, the legislature passed LSA-R.S. 22:668, which provides as follows:
Notwithstanding any provision of any policy or contract of insurance or health benefits issued after the effective date of this Act, whenever such policy or contract provides for payment or reimbursement for any service, and such service may be legally performed by a chiropractor licensed in this state, such payment or reimbursement under such policy or contract shall not be denied when such service is rendered by a person so licensed. Terminology in such policy or contract deemed discriminatory against any such person or method of practice shall be void. The provisions of this Section shall apply to all new policies issued on or after November 1, 1975. Any insurer who, on August 1, 1975, has health and accident policies in force shall, upon the anniversary date of such policies convert all existing policies to conform to the provisions of this Section; provided, however, that all existing policies shall be converted to conform to the provisions of this Section by August 1, 1976.
The statute was amended in 1984 to add Subsection B, which includes the "State of Louisiana" within its terms. LSA-R.S. 22:668, as amended by Acts 1984, No. 680, § 1, provides:
A. (1) Notwithstanding any provision of any policy or contract of insurance or health benefits issued after the effective date of this Section, whenever such policy or contract provides for payment or reimbursement for any service, and such service may be legally performed by a chiropractor licensed in this state, such payment or reimbursement under such policy or contract shall not be denied when such service is rendered by a person so licensed. Terminology in such policy or contract deemed discriminatory against any such person or method of practice shall be void.
(2) The provisions of this Section shall apply to all new policies issued on or after November 1, 1975. Any insurer who, on August 1, 1975, has health and accident policies in force shall, upon the anniversary date of such policies, convert all existing policies to conform to the provisions of this Section; provided, however, that all existing policies shall be converted to conform to the provisions of this Section by August 1, 1976.
B. Any person, partnership, corporation, or other organization or the state of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders, or other persons shall be subject to the provisions of this Section. This Section shall not apply to collectively bargained union welfare plans, other than health and accident plans.
C. The provisions of this Subsection shall apply to all new policies issued on or after December 1, 1984. Any insurer *318 who on December 1, 1984, has health and accident policies in force shall convert upon the anniversary date of such policies all existing policies to conform to the provisions of Subsection B of this Section. All existing policies shall be converted to conform to the provisions of Subsection B of this Section no later than December 1, 1985.
(Footnote deleted.)
In 1977, the Legislature enacted LSA-R.S. 40:1299.65. The purpose of the statute is to ensure "freedom of choice" regarding chiropractic care:
No agency of the state, parish or municipality, under the laws of the state of Louisiana, shall deny to the recipients or beneficiaries of their aid or services the freedom to choose a duly licensed chiropractor as the provider of care or services which are within the scope of practice of the profession of chiropractic as defined in R.S. 37:2801(3).
On July 2, 1984 (the day after the passage of the disputed portion of the plan), then-Governor Edwin Edwards, approved the passage of LSA-R.S. 42:851.2:
Notwithstanding any provision of law or any rule or regulation to the contrary, the Board of Trustees of the State Employees Group Benefits Program shall provide its eligible benefits as defined by the program for services which are rendered within the lawful scope of practice of a duly licensed chiropractor as defined in R.S. 37:2801. There shall be no discrimination in the payment of benefits allowed for such services whether performed by a chiropractor or physician in instances where the services performed are within the lawful scope of practice of both professions. Terminology in such a policy, contract, or plan considered discriminatory against any such person or method of practice shall be void.
The general rules for statutory interpretation are set forth in Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La. App. 1st Cir.1984), from which we quote as follows:
When a law or ordinance is clear and free from all ambiguity, it must be given effect as written.
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker.
When the expressions of a law are "dubious", the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it. When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory. If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail.
(Citations omitted.)
When the plan was first drafted, chiropractors were paid for their services in the *319 same manner as physicians. As chiropractic expenses rose during the 1980's, steps were taken to curtail rising costs. A new section for the plan was prepared by consultants of the Board of Trustees, Martin E. Segal & Company, which read as follows:
Services of a doctor of chiropractic (D.C.), with the following limitation: the Program will pay 80 percent of eligible charges incurred, said charges not to exceed [$]1,000 for any Covered Person per Calendar Year. Eligible charges shall further be limited to $100 for any Covered Person per calendar month.
According to the testimony of Dr. James McElveen, the Executive Director for the Board of Trustees, State Employees Group Benefits Program, the section was changed to its current state[2] after a public hearing in which Paragraph G was objected to on the grounds that it discriminated against chiropractors and violated substantive law.
Martin E. Segal & Company's representative, Louis Champagne, testified he is the individual currently assigned the primary consulting responsibilities for the program. In 1984, he was a benefits consultant, whose responsibilities included general consulting with the group benefits program, and he was involved in the drafting of the plan. Champagne admitted that after the public hearing the Board realized it had to formulate a plan which applied to chiropractors without mentioning the word "chiropractor."
The trial court in rendering judgment placed great emphasis on the testimony of Champagne. After plaintiff established that chiropractors cannot practice in a hospital, the following colloquy occurred on cross-examination between Champagne and John Martzell, attorney for plaintiff:
Q. I'm just asking if you're aware of the statutes, generally, with the legislature that the legislature has expressed some concern about discrimination against chiropractors. Are you aware of that?
A. Yes, I am.
Q. Okay. Now, your initial language used the word chiropractor, did it not?
A. Yes.
Q. But the ultimate language in the plan that was adopted does not; is that correct?
A. That's correct.
Q. We have the plan language here, Mr. Champagne, and maybe you are the person that can answer this. Do you know who came up with the idea to limit G-24 to [outpatient] treatment?
A. To the best of my recollection, it was something of a joint decision.
Q. Bywho was involved in that joint decision?
A. Again, to the best of my recollection, it wasI was involved, and I believeI believe the benefits committee of the Board discussed it. I am not absolutely certain at this point.
Q. After the public hearing, were they concerned about using the word chiropractic in the section?
A. I believe they were, yes.
Q. And isn't it a fact, Mr. Champagne, that some device had to be concocted to apply to chiropractors without using the word chiropractor?
A. That would be a reasonable assumption.
Q. Thank you. Thank you. Four years I've been looking for that answer.
Defendant contends that the inpatient/outpatient distinction instead of the original physician/chiropractor distinction renders the plan sufficiently neutral. We disagree.
*320 Gayle Sparks Ridgedell testified on behalf of plaintiff. Ridgedell worked for State Group Benefits from 1981 to 1989. She was claims manager from 1986 to 1989. Her testimony indicated that during the entire time with the Benefits Board, no one other than a chiropractor filed a claim under Paragraph G for services rendered on an outpatient basis under the plan. As a practical matter, no other group appears to have been seriously impacted by the addition of Paragraph G to the plan.
"The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it...." Bunch, 446 So.2d at 1360. To accomplish the object of the legislative enactments designed to protect chiropractors from discrimination, we feel constrained to hold that Paragraph G violates substantive law since it is the result of discriminatory restrictions thinly disguised as non-discriminatory restrictions.[3] We understand the need for cost containment. However, we believe the legislature is the more appropriate forum to decide this issue.
Based on our holding in the above assignment of error, we pretermit answering defendant's remaining assignments of error.
The judgment of the trial court is hereby affirmed, with costs in the amount of $2,268.44 to be paid by defendant.
AFFIRMED.
NOTES
[1] Other petitioners include Stephen R. Mooring, D.C., Thomas Brady, John L. Berton, Norma Corbin, Robert P. Daniels, Paul A. Dufour, Winston Hackbarth, Warren H. Hunter, Robert Johnson, Sheryl L. Laing, Denice L. Myers, Phillip K. Puro, Phillip Perego, John E. Ritche, Edsel W. Smith, and Joyce A. Sneed.
[2] The section currently reads:

Outpatient treatment in connection with the detection or correction by manual or mechanical means of structural imbalance, distortion or subluxation in the human body for purposes of removing nerve interference when such interference is a result of or related to distortion, misalignment, or subluxation of or in the vertebral column, with the following limitations: The Program will pay 80 percent of eligible charges incurred, said charges not to exceed $100 for any Covered Person per calendar month.
[3] Our opinion is strengthened by Sandefur v. Cherry, 455 So.2d 1350 (La.1984). In Sandefur, the United States Court of Appeals, Fifth Circuit, certified a question to the Louisiana Supreme Court to determine whether the state could reimburse an ophthalmologist while not reimbursing an optometrist for eye care services provided to persons eligible for assistance under the Louisiana Medical Assistance Plan, Medicaid. After examining a statutory scheme similar to that at issue in this case, the court held that "[t]he statutory prohibition, found in both R.S. 37:1066 and R.S. 49:185, against any state employee `directly or indirectly' limiting the choice of an optometrist by a patient removes any opportunity for the state employee to exclude optometrists." Id., 455 So.2d at 1351.