Dear Representative Simpkins:
You have sent us a thoroughly researched request relating to discrimination against chiropractic care in the payment of health care benefits by providers of health care insurance. You have cited and quoted from R.S. 22:668 and R.S. 40:1299.65, both of which prohibit such discrimination, and have included a copy of Chiropractic Ass'n of La. v. State, thru the Bd. of Trustees of the State Employees Group Benefits Program, 595 So.2d 316
(La.App. 1st Cir. 1991) writ den. 600 So.2d 609 (La. 1992), which held the following to be violations of law:
 "[D]iscriminatory restrictions [limiting benefits covering outpatient treatment of structural imbalance, distortion or subluxation relating to the vertebral column] thinly disguised as non-discriminatory restrictions [in that, although the limitation applied to any health care provider, the services were peculiarly chiropractic in nature and medical doctors, but not chiropractors, could get around the limitation by rendering the services on an in-patient hospital basis]."
Id., 595 So.2d at 320. You also enclosed bulletins and policy statements from the Commissioner of Insurance announcing his intention to enforce these anti-discrimination laws among the insurance industry.
You also tell us that some municipalities and other political subdivisions, in your opinion, are not in compliance with these legal authorities in providing health care coverage to their employees. Your question is whether, in our opinion, further legislation is needed to correct the perceived problem or whether existing law is sufficient (as it seems to be, according to the material you sent us).
Health care coverage is a very complex subject matter, as are also the methods available for the enforcement of anti-discrimination laws. What we suggest is that the legislature employ its inherent investigatory powers. Art. III, § 1 La. Const'n (1974). See, for example, ASP, Inc. v. Capital Bank Trust Co., 174 So.2d 809 (La.App. 1st Cir. 1965) writ refused 247 La. 724, 174 So.2d 133 (La. 1965). An appropriate standing or ad hoc legislative committee or subcommittee can investigate the matter to determine what, if any, additional legislation is needed. The committee could hear testimony from those who are providing the questionable coverages and solicit from them their rationale and basis for their policies. It was precisely this kind of foundation which was laid in the trial of the Chiropractic Association case and upon which the decision of the appellate court was ultimately based. See the testimony quoted and described at 595 So.2d 319-320. The legislature, after such investigation, might discover that no new legislation is needed or might discover that some additional legislation, such as clarifying language applying specifically to covered employees of political subdivisions or special penalties, are needed to spur compliance.
We trust this opinion has adequately answered your request, but if you have any further questions about this or any other matter relative to your public duties, please do not hesitate to ask.
With warmest regards, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH/bb 0886f