666 So.2d 1272 (1996)
Dr. Thomas M. NOSSER, et al., Plaintiffs-Appellees,
v.
HEALTH CARE TRUST FUND BOARD OF the CITY OF SHREVEPORT, Defendant-Appellant.
No. 27619-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
*1273 Ramona N. Wallis, Shreveport, for Defendant-Appellant.
Michael H. Wainwright, Shreveport, for Plaintiffs-Appellees.
Before NORRIS, BROWN, and WILLIAMS, JJ.
NORRIS, Judge.
Dr. Thomas M. Nosser and the Chiropractic Association of Louisiana filed suit in February 1994 against the Health Care Trust Fund Board of the City of Shreveport, seeking a declaratory judgment that a certain limitation in the health care plan provided to participating employees of the City of Shreveport violated La.R.S. 22:668 and 40:1299.65. Essentially, plaintiffs asserted the city's plan discouraged participants from selecting chiropractic treatment methods, and discriminated against practitioners of the chiropractic profession in violation of statutory law. The Board filed an answer and reconventional demand generally denying the allegations of plaintiffs' petition and praying for declaratory judgment that the city's plan did not violate statutory law. Alternatively, if it was found that the plan did violate statutory law, then the Board prayed for a declaration that the statutes as applied are an unconstitutional increase of financial burden on a political subdivision.
Plaintiffs subsequently filed a motion for summary judgment that the trial court granted on November 18, 1994. Currently before us is the Board's appeal of that judgment. For the following reasons, we affirm.

The Coverage limitation
The city's health care plan limits to $500.00 the maximum annual benefit payable for "spinal manipulative therapy and any physical therapy type modalities rendered in connection therewith by an osteopathic physician, chiropractor or medical doctor." Furthermore, "spinal manipulative therapy" is defined in the city's plan as meaning:

*1274 The practice or procedure by which the hands or any instrument or device [are] used to adjust, mobilize, manipulate, massage, stimulate or influence the spine and the adjacent or nearby muscles, ligaments, nerves and tissues, for the purpose of diagnosis, treatment or otherwise improving a Covered Person's physical or mental condition.
The question before the trial court on summary judgment, and before this Court on appeal, is whether this limitation violates La. R.S. 22:668 and 40:1299.65 quoted in pertinent part below:
22:668. Selection of Type of Treatment; Reimbursement
A. (1) Notwithstanding any provision of any policy or contract of insurance or health benefits issued after the effective date of this Section, whenever such policy or contract provides for payment or reimbursement for any service and such service may be legally performed by chiropractor licensed in this state, such payment or reimbursement under such policy or contract shall not be denied when such service is rendered by a person so licensed. Terminology in such policy or contract deemed discriminatory against such person or method of practice shall be void.
40:1299.65. Chiropractic Care; Freedom of Choice
No agency of the state, parish or municipality, under the laws of the State of Louisiana, shall deny to the recipients or beneficiaries of their aid or services the freedom to choose a duly licensed chiropractor as the provider of care or services which are within the scope of practice of the profession of chiropractic as defined in R.S. 37:2801(3).
The provisions of La.R.S. 37:2801(3) define the "practice of chiropractic" in pertinent part, as follows:
Holding one's self out to the public as a chiropractor and as being engaged in the business of, or the actual engagement in, the diagnosing of conditions associated with the functional integrity of the spine and treating by adjustment, manipulation, and the use of the physical or other properties of heat, light, water, electricity, sound, massage, therapeutic exercise, mobilization, mechanical devices, and other physical rehabilitation measures for the purpose of correcting interference with normal nerve transmission and expression.
A comparison of the type of treatment/therapy employed in the practice of chiropractic, as defined by statute, and the type of treatment/therapy limited under the city's health care plan, leaves no reasonable doubt that the city's plan effectively limits payment for the type of treatment/therapy provided by chiropractors. Further, the uncontradicted summary judgment evidence clearly shows that the city's plan has had precisely that effect.

Discussion: Validity of the limitation
On appeal, the Board points out that the city's plan does not exclude payment for chiropractic services, but rather requires payment for "spinal manipulative therapy and any physical therapy-type modalities rendered in connection therewith by an osteopathic physician, chiropractor or medical doctor[.]" The Board asserts that the city's plan merely limits payment for spinal manipulative therapy regardless of the health care provider, just as the plan limits the amounts paid for other covered medical expenses. The Board further argues that the city's plan can limit liability by setting policy limitations, and that the participants in the plan are free to choose spinal manipulative therapy. Citing Guarantee Trust Life Ins. Co. v. Gavin, 882 F.2d 178 (5th Cir.1989), the Board argues that the sole purpose of La. 22:668 and 40:1299.65 is to assure equal treatment of medical doctors and chiropractors performing the same kinds of services for patients. We disagree with the Board's arguments for several reasons.
First, we again emphasize that the limitation of the plan on its face is a limitation on the type of treatment/therapy utilized in the practice of chiropractic, as defined by statute. The fact that the limitation also mentions osteopathic physicians and medical doctors does nothing to change the scope of the limitation vis-à-vis chiropractors, and this is true regardless of any actual intent to discriminate *1275 on the part of the drafters of the plan's limiting language. Put another way, it is not necessary for the plan to limit therapy/treatment performed exclusively by chiropractors; it is enough that the scope of the limitation, whether accidentally or intentionally, closely corresponds with the scope of the practice of chiropractic.
Next, we note that the Board minutes in question were furnished to appellants as answers to interrogatories by the Board. Considering La.C.C.P. art. 966 B, we find the Board's objection to "uncertified copies" of the minutes to be meritless. We also note that all the copies of minutes bore both the signature of the Mayor as Chairman of the Board, and of the Executive Secretary of the Board. These minutes repeatedly refer to the Plan's annual limit on "chiropractic care," and in one instance even refer to "chiropractic care (spinal/manipulative therapy)." There also was discussion on more than one occasion concerning the legality of the limit on "chiropractic care." Thus, even if the law required intentional discrimination against chiropractors, the minutes in question would be sufficient to carry the plaintiffs' burden on summary judgment and shift the burden to the Board.
Under La.C.C.P. art. 967, when a motion for summary judgment is made and supported as provided by law, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. For reasons already discussed, we deem the limiting language in this plan was discriminatory against the method of practice employed by chiropractors. Although "spinal manipulative therapy" is not necessarily a method exclusively employed by chiropractors, it is critical to the practice of chiropractic. In addition to the statutory definition of the practice of chiropractic, previously quoted, we note that Black's Law Dictionary, 5th Edition, defines the practice of "chiropractic" as:
[A] method of detecting and correcting by manual or mechanical means structural imbalance, distortion or subluxations in the human body to remove nerve interferences where such is the result of or related to distortion, misalignment or subluxations of or in the vertebral column. * * * A system of therapeutic treatment, through adjusting of articulations of human body, particularly those of the spine. * * * The specific science that removes pressure on the nerves by the adjustment of the spinal vertebrae. [Emphasis added, citations omitted.]
Similarly, Schmidt's Attorneys' Dictionary of Medicine (1995 ed.) defines "chiropractic" in pertinent part as:
A system of diagnosis and treatment of disease based on the belief that all diseases are caused through some fault of the nerves. The fault, it is said, may be due to an abnormal function of the nerves for which no other structures or tissues in the body are responsible, but more often the abnormality is explained by the believers of the system on the basis of pressures from nearby tissues, organs, and, especially, bones. The most incriminated bone is the spinal column, and treatment, therefore, consists almost entirely of manipulating the spinal bones or vertebrae with the view of eliminating these pressures upon the nerves. [Emphasis added.]
The plaintiffs carried their burden for purposes of summary judgment by showing the scope of the limiting language of the plan. Thus, the burden shifted to the Board to set forth specific facts showing that there was a genuine issue for trial. However, the Board offered no evidence in opposition to the plaintiffs' motion for summary judgment.
Before leaving the issue of the discriminatory nature of the plan's language, we note our agreement, not only with the trial court, but also with the Board, that the Board generally is entitled to place some limitations on coverage, and this opinion should not be read as reaching a contrary result. Instead, we are required by the above-quoted statutes to disapprove the discriminatory nature of the limitations at issue. The Board may be able to place nondiscriminatory limitations on *1276 coverage; however, it may be able to accomplish the coverage limitations described herein only through the legislative process. The latter is obviously beyond the scope of the judiciary.
Finally, we do not agree with appellant's assertion that the sole purpose of La. 22:668 and 40:1299.65 is to assure equal treatment of medical doctors and chiropractors performing the same kinds of services for patients. While that is one goal of the statutes, it is not the only goal. The first sentence of 22:668 A(1) essentially requires payment or reimbursement to chiropractors under any policy or contract of insurance for services that legally may be performed by a chiropractor when the policy or contract provides for payment or reimbursement of such services. If the statutory language ended here, then we would agree with appellant's position because there would be no prohibition against an insurance policy not providing reimbursement for chiropractic services. A fortiori, there would be no prohibition against an insurance policy containing limitations aimed specifically at chiropractic services. Such policy provisions would be analogous to those involved in Schrumpf v. Georgia Int'l Life Ins. Co., 413 So.2d 267 (La.App. 3d Cir.1982).
In Schrumpf, an insured brought an action to recover benefits allegedly due for dental work under a group insurance plan. The insurer rejected the claim for dental work because the work was excluded from the policy's coverage. Plaintiff then filed a motion for summary judgment, relying on La. R.S. 22:213.1 which required the terms "physician" or "medical doctor" to include a dentist when an insurance contract provided for payment of surgical procedures specified in the policy or performed in an accredited hospital in consultation with a licensed physician, and the surgical procedures were within the scope of a dentist's professional license. Both the trial court and the appellate court rejected the plaintiff's position. The plaintiff did not have his dental work performed in a hospital, and the work involved was specifically excluded under the policy. Significantly, the appellate court stated that its interpretation of the statute was that it provided that benefits otherwise payable should not be denied solely by reason of the service being performed by a dentist, but the statute did not require the inclusion of dental coverage in all policies of insurance issued in Louisiana.
In contrast to the statute involved in Schrumpf, R.S. 22:668 goes beyond merely requiring that benefits otherwise payable shall not be denied simply because the service is being performed by a chiropractor. The second sentence of the statute mandates that terminology in a policy or contract of insurance or health benefits "deemed discriminatory against any such person [chiropractor] or method of practice [practice of chiropractic] shall be void." The addition of this sentence indicates that the legislature intended to reach all such discriminatory provisions of insurance policies, not merely those concerning covered services that may be performed by chiropractors as well as other professions.[1]
The specific statutory provision preventing discrimination through policy terminology against chiropractors and the methods of practice they utilize convinces us that the city's plan limitation aimed at "spinal manipulative therapy" falls within the prohibition of 22:668. In like manner, we find that the freedom of choice provisions of 40:1299.65 which give beneficiaries the freedom to choose a chiropractor as the provider of care or services within the scope of the practice of the profession of chiropractic, reach beyond those situations in which a particular type of service can be performed by more than one profession. For example, if treatment of a particular muscle strain can be accomplished through spinal manipulative therapy on the one hand, or drug therapy on the other, an insurance policy that sets a low enough ceiling on reimbursement for spinal manipulative therapy, while setting a higher limit for drug therapy, can have the effect of limiting the *1277 recipient's freedom to choose the type of services provided by a chiropractor.
In addition, the deposition evidence easily shows that the plan's limitation has had the effect of discriminating against chiropractic service. Debra Campbell, the Claims Manager, had no knowledge of anyone submitting claims under the spinal manipulation therapy provision other than for chiropractic care. Sara Robinson, another claims agent, had no knowledge of spinal manipulation therapy claims being filed by anyone other than a chiropractor. Bonnie Mezzio and Mimi Montgomery both corroborated this. It is uncontradicted that the only providers who have ever submitted claims under the plan's limitation have been chiropractors. As a matter of actual fact, the instant limitation discriminates against chiropractic services and practitioners.
Finally, we observe that the instant situation parallels that in Chiropractic Ass'n of La. v. State, 595 So.2d 316 (La.App. 1st Cir.1991), in which the state group benefits program limited the amount the program would pay for outpatient treatment in connection with detection or correction by manual or mechanical means of structural imbalance, distortion or subluxation in the human body for the purposes of removing nerve interference when such interference was a result of or related to distortion, misalignment or subluxation of or in the vertebral column. The trial court found this restriction violated R.S. 22:668 and 40:1299.65; the appellate court affirmed. Although that case did not involve either the exact provisions as the case at bar, or a motion for summary judgment, the case is one in which the limitation was aimed at the types of services performed by chiropractorslimitations the appellate court concluded were "discriminatory restrictions thinly disguised as non-discriminatory restrictions." The court went on to state that while it understood the need for cost containment, it believed the legislature is the more appropriate forum to decide that issue.

The Summary judgment standard
Under familiar procedural principles, the plaintiff, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed, and such judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. For the reasons expressed above, we conclude that this is a case in which summary judgment was appropriate, and in which the plaintiff showed that there was no genuine issue as to material fact. Although defendant could not then rest on its allegations or denials in its pleading, defendant failed to adduce any evidence showing the existence of a genuine issue for trial. In reaching this conclusion we are fully aware that summary judgment is warranted only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law, and that an appellate court must review the record in a summary judgment matter de novo, under the same criteria which govern the trial court's consideration of whether summary judgment was appropriate. See Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992).
Appellant argues that the trial court erred in granting summary judgment based on a subjective fact, such as discrimination. While it is true that summary judgment rarely is appropriate for a determination based upon subjective facts, we conclude, as previously noted, that the discrimination referred in the provisions of 22:668 need not be intentional discrimination. Rather, the word "discriminatory" should be understood in an objective rather than a subjective sense. Stated differently, discrimination should be understood as differentiation. Therefore, the granting of summary judgment does not require a determination of subjective facts under the circumstances of this case.
Appellant also asserts that summary judgment was inappropriate because the case was brought as an action for declaratory judgment. Thus, appellant argues that the trial court could not order the deletion of the policy limitation in its grant of summary judgment. We conclude that appellant's argument *1278 strains too hard against the wording of the judgment. Without question, the validity or proper construction of the plan's limitation falls squarely within the scope of La.C.C.P. art. 1871 in general and art. 1872 in particular. Article 1871 states that courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed, while Article 1872 states that a person interested in, among other things, a written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
Although the trial court's judgment is phrased in terms of deleting the offending limitation, the plain meaning of the judgment is that the limitation in the policy is void and ineffectual. Nor is there any prohibition against the granting of summary judgment in an action for declaratory judgment. In granting summary judgment in such a case, a trial court does nothing more than declare that the question of construction or validity before the court is one in which there are no genuine issues of material fact to be resolved.
Finally, we recognize that the trial court correctly limited the scope of its judgment to the plaintiff's motion for summary judgment. Although the Board filed a reconventional demand also seeking a declaratory judgment, it did not file a cross motion for summary judgment. Furthermore, even though the trial court's judgment did not resolve all the issues in the case, a summary judgment may properly be sought for only part of the relief for which a party prays, La.C.C.P. Article 966 A, and a final judgment may be rendered and signed by the court, even though it does not grant the successful party all of the relief prayed for, or adjudicate all of the issues in the case, when the court grants a motion for summary judgment. La.C.C.P. art. 1915 A(3).

Conclusion
In accordance with the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, Judge, dissenting.
The majority opinion concludes that full payment to chiropractors for "spinal manipulative therapy" is assured regardless of the subjective nature of the underlying injury or the cost of what may become daily adjustments over an extended period.[1]
In 1974, chiropractic was legalized and recognized as a health care profession in Louisiana. Since 1974, the legislature has passed laws guaranteeing equal treatment of medical doctors and chiropractors performing the same kind of services. Naturally, chiropractors are restricted in the type of services they can perform. Chiropractors may not prescribe drugs or practice in a hospital. LSA-R.S. 37:2801(3). Terminology in a policy that serves to restrict access to and discourage use of medically appropriate methods and procedures practiced almost exclusively by chiropractors would be discriminatory and violate LSA-R.S. 22:669 and LSA-R.S. 40:1299.65. On the other hand, the Board is entitled to place some limitations on coverage. The issue presented in this action is whether an annual maximum benefit of $500 for "spinal manipulative therapy" is discriminatory or a legitimate cost containment limitation on liability.
The affidavits attached by plaintiffs to the motion for summary judgment arguably showed that chiropractors predominantly provide spinal manipulative therapy. To show discrimination, however, requires another step in the analysis. The statutes do not prohibit denial or limitation of payment based on legitimate factors other than the degree of the provider. Coverage for many *1279 procedures performed by medical doctors are also limited. Thus, the record must show that the annual maximum benefit for spinal manipulative therapy was imposed for the purpose of discouraging plan members from using chiropractic services that are appropriate for the underlying condition or injury. Guarantee Trust Life Ins. Co. v. Gavin, 882 F.2d 178 (5th Cir.1989).
This record does not reflect what coverage restrictions have or have not been placed on other medical procedures. The seriousness of the medical condition may likewise be a consideration. For example, therapy associated with open heart surgery may be more critical than that for back pain supported only by subjective findings. Cost containment and the financial ability of the plan to provide for life-threatening situations may influence whether limiting charges for costly but less serious conditions are necessary.
We have inadequate information to resolve these serious factual questions. Material facts are in dispute and summary judgment was not appropriate. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Yocum v. City of Minden, 566 So.2d 1082 (La.App.2d Cir.1990).
I am further confused by the majority's conclusion that the legislation guarantees more than equal treatment and mandates inclusion and full payment for chiropractic services in any policy or contract of insurance. LSA-R.S. 22:668 specifically states "whenever such policy or contract (of insurance) provides for payment or reimbursement for any service and such service may be legally performed by a chiropractor." To excise discriminatory language in a contract of insurance is not the same as requiring inclusion or full payment for chiropractic services.
NOTES
[1] If the legislature had intended that health insurance policies need not include chiropractic service, it presumably would have used language like that found in La.R.S. 22:665 D, concerning licensed psychologists.
[1] The majority opinion suggests the possibility of coverage limits and then states, "however, it may be able to accomplish the coverage limitations described herein only through the legislative process."