Commonwealth *v.* Allison, Appellant.

Argued April 10, 1944. Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Alexander J. Bielski,* for appellant.

*Henry X. O'Brien,* Assistant District Attorney, with
him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., July 15, 1944:

In 1915 the Bureau of Medical Education and Licen-
sure[1] issued to appellant a limited license which con-
ferred upon him "the right to treat the sick by Herbs
and Massage ...... upon request of a person duly
authorized to prescribe the same." He has twice pre-
viously been shown to have exceeded the authority
granted by this license and been convicted of engaging
in the practice of medicine and surgery, of assuming
the title of doctor of medicine and surgery and of
diagnosing and treating diseases without having first
fulfilled the requirements of what is now known as the
Medical Practice Act.[2] Both convictions were upheld
by this court.[3]

---

[1] Now known as The State Board of Medical Education and
Licensure Act of April 9, 1929, P. L. 177, art. II, §202, as amended
by the Act of May 21, 1943, P. L. 496, 71 PS 62.

[2] Act of June 3, 1911, P. L. 639 as finally amended by the Act
of August 6, 1941, P. L. 903, 63 PS 401 et seq.

[3] *Com. v. Allison,* 103 Pa. Superior Ct. 140, 156 A. 812; *Com.
v. Allison,* 132 Pa. Superior Ct. 606, 1 A. (2d) 920.

Either appellant has no respect for the law or he is mentally incapable of understanding the limitations implicit in the form of license he possesses. For, not only did the commonwealth show that, at the times charged in the indictment, appellant accepted patients, examined them, diagnosed their ailments, prescribed treatments; he glibly admitted these practices from the witness stand. And there is not even the pretense that he limited his patients to those referred for treatment by a properly licensed physician; in fact, one has the impression from reading his testimony that he regards all orthodox physicians and surgeons as either fools or knaves and will have little or nothing to do with them.

Having twice appealed to us in vain one would expect that in this, his third appeal, the ingenuity of counsel, challenged by almost overwhelming odds, would produce a somewhat novel approach to the problem. We have not been disappointed.

It is now contended that in restricting appellant to the treatment of patients referred to him by licensed physicians, the Bureau of Medical Education and Licensure—composed, according to him, of "professional competitors"—has arbitrarily discriminated against him; that there is no statutory authority for such a narrow limitation on his authority and that it contravenes the Fourteenth Amendment to the Federal Constitution.

True, there is no express statutory authority for the particular limitation complained of. The act, by Sec. 6, (63 PS 408), gives to the Bureau broad, discretionary powers to establish a system of special licensure and to issue to persons who fulfill such qualifications as the Bureau shall provide a license to practice one or more of the limited branches of medicine or surgery. The constitutionality of the legislation has been passed upon and upheld. *Long v. Metzger*, 301 Pa. 449, 152 A. 572, and cases cited. Of necessity the Bureau may make dis-

criminations; they are inherent in the nature of the functions it performs. Yet we must grant that the acts of the Bureau may always be subjected, by one affected, to the test of reasonableness under the Fourteenth Amendment. But, so far from being unreasonable, the requirement that practitioners of this kind should treat patients only at the request of, and hence under some supervision by, a licensed physician is a necessity if the public is to be adequately protected against exploitation.

Appellant is a quack of the worst sort. It is easy to see why, if he were compelled to wait for patients referred to him by physicians, he would have no practice. There was no proof of the chemical ingredients of the pills and nostrums he sold to his patients, nor of the type of massage he employed. But the miracles he professed to be able to accomplish would make the witchery of the Middle Ages seem by comparison an infant and under-developed craft. He professes to be a "bloodless surgeon, a botanic physician." When asked how he would cure a case of appendicitis, he said: "That is very easy. That would be cured in one hour's time ordinarily without shedding any blood or making any incision or like that. That is easily cured in one hour and a patient is ready to go to work in one hour." Asked what he would do with a ruptured appendix, he said: "Why, my friend, I have been practicing forty-three years and I have yet to see the physician that has ever saw a ruptured appendix." He could remove diseased tonsils "without cutting": "By the use of herbs taken internally and massage to the throat, cure any case of tonsils, just—well, I'll say within a week or so." He professed to have cured many cases of cancer and as for paralysis: "Often times paralysis is caused by an obstruction of circulation and by removing that obstruction in a few minutes time the party has the full use of their arms or legs."

It makes one shudder to think that a man like this should be entrusted with any part of the responsibility for the diagnosis or treatment of human disease. The story of this case is more persuasive than any abstract argument could possibly be of the wisdom of the Bureau in limiting such practitioners to treatments requested by licensed physicians.

The remaining contention—that this proceeding should have been brought under Sec. 6 rather than Sec. 2 of the Medical Practice Act as amended—was made and decided adversely to appellant in his first appeal, 103 Pa. Superior Ct. 140.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.