Howe et al., Appellants, *v.* Smith.

Argued March 10, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Jacob S. Richman,* for appellants.

*William M. Gross,* Assistant Attorney General, with him *Joseph L. Cohen,* Assistant Attorney General, and *Walter E. Alessandroni,* Attorney General, for appellees.

*W. E. Shissler,* with him *Nauman, Smith, Shissler & Hall,* for amicus curiae.

OPINION BY WOODSIDE, J., April 14, 1964:

This is an appeal from the dismissal of an amended complaint in equity to enjoin the Secretary of Revenue and his administrative subordinates from refusing to accept certificates from chiropractors concerning the physical fitness of certain motor vehicle operators.

Two duly licensed chiropractors and the Pennsylvania Licensed Chiropractors' Association filed a complaint in equity in the Dauphin County Court of Common Pleas, sitting as the Commonwealth Court. The plaintiffs alleged that the Secretary of Revenue and the other defendants have unlawfully discriminated against licensed chiropractors by refusing to accept their certificates of the physical fitness of their patients.

The Attorney General filed preliminary objections in the nature of a demurrer. The court below accepted the Attorney General's contention that the amended complaint did not set forth a cause of action and dismissed it. The plaintiffs appealed, contending that we

should remand the case for disposition after hearing, or, at least, permit them to further amend the complaint in order to more clearly, fully and sharply plead the scope of practice of the plaintiffs as authorized by statute and the professional boards' regulations.

Accepting as true all of the facts (but not the conclusions of law and suggested interpretations of statutes) set forth in the amended complaint, we agree with the court below that it does not set forth a cause of action, and that all the facts necessary to a determination of the issue are before us. As we view it, nothing could be gained by the plaintiffs were they to be given a hearing or allowed to further amend their complaint.

The complaint sets forth that in 1960 the secretary instituted a program requiring applicants for motor vehicle learner's permits and operator's licenses and certain licensed operators to submit to an examination by a licensed physician as a condition to obtaining or retaining their operating privileges.[1]

In requiring the examination, the secretary acted pursuant to the authority contained in §608(g) of The Vehicle Code of April 29, 1959, P. L. 58, 75 P.S. §608-(g), which provides: "The secretary may, in his discretion, require the special examination, by such agencies as the secretary may direct, of any applicant for learner's permit or operator's license, or of any operator, to determine incompetency, physical or mental disability or disease, or any other condition which

---

[1] According to the appellants' brief, "the examination encompassed ten conditions to be checked: four, by the State Police such as (1) loss of use of both hands; (2) neurological disorders affecting muscular control and coordination to a noticeable degree; (3) 20/70 vision or less; (4) dyspnea—obvious shortness of breath on slight exertion; and six, by a licensed physician—(1) hypertension; (2) neuropsychiatric disorders causing substantial disturbances; (3) conditions causing lapses of consciousness; (4) uncontrolled diabetes; (5) chronic alcoholism; (6) drug addiction."

might prevent such applicant from exercising reasonable and ordinary control over a motor vehicle or tractor."

The plaintiffs do not question the validity of the secretary's authority to require physical and mental examinations of licensees or applicants for licenses, but they contend that by limiting the examinations to physicians and refusing to accept the certificates of chiropractors, the secretary is discriminating against them in violation of the Equal Protection Clauses of the 14th Amendment of the United States Constitution, and Article I, Section 1 of the Pennsylvania Constitution.

The Commonwealth Court, in an opinion by President Judge WALTER R. SOHN, decided that only licensed physicians had the statutory authority to diagnose diseases, and that determining mental disabilities and diagnosing diseases are in the area that is prohibited to the practice of chiropractic. Of course, if the chiropractors may not diagnose, the secretary was not only authorized but required to reject all certificates of examination made by them.

Chiropractors were first licensed to practice their profession in Pennsylvania under the Medical Practice Act of June 3, 1911, P. L. 639, as amended, 63 P.S. §§401, 408. This is the act providing for the licensing of medical practitioners, as well as others engaged in the healing arts. Plaintiff Giammarino was admitted to practice under this act. It contains no definition of chiropractor or chiropractic, but it provides not only for the issuance of medical licenses but also for the issuance of certificates "limited to the practice of his or her pursuit" for which the person was specifically licensed. Limited licenses issued under this act do not authorize the licensee to practice medicine or the healing arts generally. *Commonwealth v. Allison,* 155 Pa. Superior Ct. 290, 38 A. 2d 535 (1944).

The Chiropractic Registration Act of August 10, 1951, P. L. 1182, 63 P.S. §601 et seq., dealt with chiropractic and provided for the licensing of chiropractors. This act in §2(b), 63 P.S. §602(b), defines Chiropractic as "a system of locating misaligned or displaced vertebrae of the human spine, the examination preparatory to and the adjustment by hand of such misaligned or displaced vertebrae, and other articulations, together with the use of scientific instruments of analysis, as taught in the approved schools and colleges of chiropractic, without the use of either drugs or surgery. The term 'chiropractic' shall not include the practice of obstetrics or reduction of fractures or major dislocations." Plaintiff Howe is licensed under this act.

Section 13 of the Chiropractic Registration Act, 63 P.S. §613, provides that practitioners, such as plaintiff Giammarino, "licensed or legally authorized to practice chiropractic" under the Act of 1911 shall continue to possess the same rights and privileges with respect to the practice of chiropractic without being required to be licensed anew under the provisions of the Act of 1951.

A comparison of the provisions of the Medical Practice Act of 1911, supra, relating to the practice of medicine and surgery with the provisions of the Chiropractic Registration Act of 1951, supra, shows the different educational requirements, different rights and different duties established for chiropractors and for those licensed to practice medicine and surgery. The validity of the prohibition against chiropractors practicing medicines is not and can not be denied.

The plaintiffs admit that their right to *treat* diseases is limited, but they contend that the Chiropractic Registration Act authorizes them to *diagnose* diseases without limit, and hence the examination required to certify the fitness of an applicant for an operator's li-

cense is within their statutory powers. They argue that the legislature indicated its intent to authorize them to diagnose diseases generally by including in the statutory definition of chiropractic "locating misalignment" and "the examination preparatory to" adjustment, "together with the use of scientific instruments of analysis." If it was the intent of the legislature to authorize the chiropractor to diagnose generally it certainly did not spell it out as clearly as it could have and should have. In fact the very use of the word "preparatory" indicates the examination was to be related to the limited practice of "adjustment." The legislature used the expression "diagnose diseases" in the Medical Practice Act, supra, in a provision which says, "It shall not be lawful for any person . . . to diagnose diseases . . . excepting those hereinafter exempted, unless he . . . has received a certificate of licensure" under the Act. 63 P.S. §401a. If the chiropractors believe that they are trained and qualified to diagnose diseases without restriction, they should ask the legislature to grant them that right rather than seek to have the courts confer it upon them by a strained construction of the statutes.

Of course, chiropractors may and must diagnose before they treat. However, in their argument here they have failed to recognize the obvious distinction between the authority to diagnose generally and the authority to diagnose for the limited purpose of determining whether the particular treatment which they may legally render to a patient is proper treatment for the disease from which the patient is suffering.

The appellants point to the educational requirements of the chiropractors as the basis for their ability to diagnose diseases generally. We have no doubt that many chiropractors have extensive knowledge and training. There, too, are many admitted to practice whose required formal education was far less than that required of medical practitioners, and even present ap-

plicants for a chiropractic license. This is especially true of those admitted under §5 of the Chiropractic Registration Act, 63 P.S. §605, a "grandfather clause."[2] Furthermore, there are techniques of diagnosis which a physician may use that are denied by statute to a chiropractor, for example, the use of diagnostic drugs.

By the amendment of June 14, 1957, P. L. 323, to clause 87 of §101 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §601, the legislature redefined physician to mean, "an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in all of its branches within the scope of the act, approved [June 3, 1911, P. L. 639] and its amendments, or in the practice of osteopathy or osteopathic surgery within the scope of the act, approved [March 19, 1909, P. L. 46] and its amendments."

Naturally the chiropractors would like to be equated with the medical profession, but neither their recognized field of practice nor the statutes relating to these professions makes such an equation realistic. Chiropractors are engaged in a limited field of the healing arts which requires less education and training of them than is required of those practicing medicine and surgery. They are classified separately by the legislature from physicians in numerous ways.

The Secretary of Revenue in accepting only examinations certified by physicians was recognizing a real distinction between physicians and chiropractors which has been recognized by the legislature. He was exercising the discretion given him by the legislature to have the examination made "by such agencies[3] as the secretary may direct."

---

[2] For definition of "grandfather clause" see *In re Berman*, 97 S.E. 2d 232, 236, 245 N.C. 612 (1957).

[3] The plaintiffs contend that physicians are not an "agency," but they have no standing to raise that question, for if the secre-

A classification of this nature made by the legislature or a governmental official does not violate the 14th Amendment to the Constitution of the United States nor Article I, Section 1, nor Article III, Section 7 of the Pennsylvania Constitution, as contended by the appellants. Classification for the purpose of legislating has been recognized as permissible under the Constitution of 1874 since *Wheeler v. Philadelphia,* 77 Pa. 338 (1875). An act which applies to all the members of the class is general and not special, and thus does not violate Article III, Section 7 of the Pennsylvania Constitution. *Commonwealth v. Hanley,* 15 Pa. Superior Ct. 271, 280 (1900). It is only when the classification is not founded on real and substantial distinctions that it becomes unconstitutional. *Young v. Department of Public Instruction,* 105 Pa. Superior Ct. 153, 159 (1932). There is a real and substantial distinction between the treatment offered by a chiropractor and that offered by a physician as defined in the Statutory Construction Act, supra. There is also a significant difference in the education and training required. The classification made by the legislature is constitutional. *Commonwealth v. Allison,* supra, 155 Pa. Superior Ct. 290, 38 A. 2d 535 (1944); *Terenzio v. Devlin,* 361 Pa. 602, 65 A. 2d 374 (1949).

The Secretary of Revenue in following the distinction between physicians and chiropractors recognized by the legislature was acting within the discretion given him by the legislature, and was not unconstitutionally discriminating between these professions.

Order affirmed.

---

tary is limited to certificates from "agencies" as the plaintiffs wish us to construe the word, they themselves would not be an "agency" and hence unable to obtain the relief they seek.