ACCEPTED
03-15-00262-CV
7920010
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/20/2015 9:59:40 AM
JEFFREY D. KYLE
CLERK

# No. 3-15-00262-CV

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/20/2015 9:59:40 AM
JEFFREY D. KYLE
Clerk

*In the Court of Appeals*
*Third District of Texas – Austin*

**TEXAS ASSOCIATION OF ACUPUNCTURE
AND ORIENTAL MEDICINE,**

*Appellant*,

v.

**TEXAS BOARD OF CHIROPRACTIC EXAMINERS AND YVETTE
YARBROUGH, EXECUTIVE DIRECTOR IN HER OFFICIAL CAPACITY**

*Appellees.*

*On Appeal from 201st District Court, Travis County, Texas*
*Case No. D-1-GN-14-000355*

# CORRECTED BRIEF OF AMICUS CURIAE NATIONAL CERTIFICATION COMMISSION FOR ACUPUNCTURE AND ORIENTAL MEDICINE

DON R. SAMPEN
MARK J. SOBCZAK
CLAUSEN MILLER PC
10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
312-855-1010 / (312) 606-7777 fax

**Attorneys for the Amicus Curiae**

1550122.1

**TEXAS RULE OF APPELLATE PROCEDURE 11 REQUIREMENTS**

Amicus curiae National Certification Commission for Acupuncture and Oriental Medicine ("NCCAOM") submits this brief pursuant to Tex. R. App. P. 11. The person paying the fee in connection with preparation of this brief is the NCCAOM. The brief is submitted on behalf of the position taken by appellant Texas Association of Acupuncture and Oriental Medicine ("TAAOM").

**IDENTITY OF PARTIES AND COUNSEL**

Appellant Texas Association of Acupuncture and Oriental Medicine

Crag T. Enoch
Melissa A. Lorber
Shelby O'Brien
Enoch Kever PLLC
600 Congress Ave., Suite 2800
Austin, Texas 78701


Appellees Texas Board of Chiropractic Examiners and Yvette Yarbrough, Executive Director in her Official Capacity

Joe H. Thrash
Assistant Attorney General
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711


Amicus Curiae National Certification Commission for Acupuncture and Oriental Medicine

Don R. Sampen
Mark J. Sobczak
Clausen Miller, P.C.
10 S. LaSalle St., 16th Fl.
Chicago, IL  60603

i

**TABLE OF CONTENTS**

TEXAS RULE OF APPELLATE PROCEDURE 11 REQUIREMENTS.................i

IDENTITY OF PARTIES AND COUNSEL ..........................................i

TABLE OF CONTENTS...................................................................... ii

INDEX OF AUTHORITIES................................................................ iii

SUMMARY OF ARGUMENT ..............................................................1

ARGUMENT ......................................................................................1

I.      INTRODUCTION:  NCCAOM'S BACKGROUND AND INTEREST
        IN THIS LITIGATION ...............................................................1

II.     THE LEGISLATURE'S TRAINING AND REGULATORY
        REQUIREMENTS FOR THE PRACTICE OF ACUPUNCTURE
        SHOULD DETERMINE THE OUTCOME OF THIS APPEAL...................4

        A.      No Intention to Reduce Training Standards Applicable to the
                Practice of Acupuncture Appears in the Legislation or Its History ....10

        B.      No Intention to Eliminate Texas Medical Board Regulatory
                Oversight Appears in the Legislation or Its History ..........................11

        C.      The TBCE's Position Creates Disharmony by Producing Disparity
                in Standards Applicable to Acupuncture Practice...............................12

        D.      The TBCE's Proposed Interpretation Contravenes the Public
                Interest .................................................................................14

CONCLUSION..................................................................................18

CERTIFICATE OF COMPLIANCE....................................................20

CERTIFICATE OF SERVICE .............................................................20

1550122.1

# INDEX OF AUTHORITIES

## CASES

*Burke v. State*,
    28 S.W.3d 545, (Tex. Crim. App. 2000) .....................................................12, 13

*DLB Architects,*
    *P.C. v. Weaver*, 305 S.W.3d 407 ....................................................................13

*Gandee v. Glaser*,
    785 F. Supp. 684 (S.D. Ohio 1992).............................................................16, 17

*Garcia v. Tex. State Bd. of Med. Examiners*,
    384 F. Supp. 434 (W.D. Tex. 1974) ................................................................15

*Howe v. Smith*,
    199 A.2d 521 (Pa. 1964)...................................................................................17

*In re J.M.R.*,
    149 S.W.3d 289 (Tex. App. – Austin 2004, no pet.)......................................13

*Lucas v. Maine Comm'n of Pharmacy*,
    472 A.2d 904 (Me. 1984) ..................................................................................17

*MCI Sales & Serv. v. Hinton*,
    329 S.W.3d 475 & n. 7 (Tex. 2010) .................................................................. 1

*Perez v. City of Laredo*,
    82 S.W.3d 605 (Tex. App. – San Antonio 2002) .................................... 17-18

*Thompson v. Texas State Board of Medical Examiners*,
    570 S.W.2d 123 (Tex. App. – Tyler 1978, writ refused n.r.e.) .....................16

## RULES, STATUTES & OTHER PROVISIONS

Tex. Gov't Code Chpt. 311.............................................................................1, 4

Tex. Gov't Code § 311.021(3), (5) ......................................................................5

Tex. Gov't Code § 311.023(3), (4), (5) ...............................................................5


Tex. Occ. Code § 1.002 ......................................................................................4

Tex. Occ. Code § 151.002(13)...........................................................................15

Tex. Occ. Code § 151.003 .................................................................................14

1550122.1

Tex. Occ. Code § 151.052 ...............................................................................11

Tex. Occ. Code (Medical Practice Act) § 151.052(a)(3)...........................5, 11, 15

Tex. Occ. Code § 201.002(a)(3) .......................................................................4

Tex. Occ. Code § 201.002(b)(2) ...................................................................4, 12

Tex. Occ. Code § 201.051 ...............................................................................11

Tex. Occ. Code § 201.151 ...............................................................................11

Tex. Occ. Code § 201.152 ...............................................................................11

Tex. Occ. Code § 201.1525 ...............................................................................6

Tex. Occ. Code § 205.001(2)...........................................4, 5, 11, 12, 17, 18

Tex. Occ. Code § 205.003(a)..............................................................................5

Tex. Occ. Code § 205.001(7), (8) ...................................................................11

Tex. Occ. Code § 205.051(a)(2) ......................................................................11

Tex. Occ. Code § 205.101(a) .......................................................................6, 11

Tex. Occ. Code § 205.101(b)...........................................................................11

Tex. Occ. Code § 205.206(a)(1) ........................................................................6

Tex. Occ. Code § 205.206(a)(3) ........................................................................6

Tex. Occ. Code § 205.255 .................................................................................6

Tex. Occ. Code § 205.301(a)(2) ......................................................................13

Tex. Occ. Code § 205.302(a)...........................................................................13

Tex. R. Evid. 201(b)(2)......................................................................................1

22 Tex. Admin. Code § 78.14(b)(1)-(3), (d)......................................................7

22 Tex. Admin. Code § 183.4(a)(5)....................................................................3

22 Tex. Admin. Code § 183.2(2) ........................................................................7

22 Tex. Admin. Code § 183.4(4) ........................................................................7

22 Tex. Admin. Code § 183.4(a)(5)..................................................................7-8

22 Tex. Admin. Code § 183.4(a)(6)....................................................................8

22 Tex. Admin. Code § 183.20(b)......................................................................8

22 Tex. Admin. Code § 183.20(b)(1)(D).............................................................3

**SUMMARY OF ARGUMENT**

The proposed construction of the amendments to the Acupuncture Chapter of the Texas Occupations Code by the Texas Board of Chiropractic Examiners ("TBCE"), is inconsistent with all the relevant standards for statutory construction as provided for in the Code Construction Act, Tex. Gov't Code Chpt. 311. In particular, the TBCE's position contravenes public interest, does not lead to a reasonable result, runs contrary to other laws on the same or similar subjects, and otherwise results in a major disparity concerning the practice of acupuncture as between the Acupuncture and Chiropractic Chapters. The TBCE's construction therefore should be rejected and the trial court's decision reversed.

**ARGUMENT**

**I. INTRODUCTION: NCCAOM'S BACKGROUND AND INTEREST IN THIS LITIGATION**

The following background information regarding the National Certification Commission for Acupuncture and Oriental Medicine ("NCCAOM") can be found on its website.[1] This Court may take judicial notice of the information inasmuch as the facts set forth are not subject to reasonable dispute and can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned. *See* Tex. R. Evid. 201(b)(2); *MCI Sales & Serv. v. Hinton*, 329 S.W.3d 475, 484 & n. 7 (Tex. 2010) (taking judicial notice on appeal of research study regarding use

---

[1] *See* http://www.nccaom.org/.

of seatbelts on buses). The information is footnoted for the convenience of the Court.

Founded in 1982, the NCCAOM is a voluntary, non-profit organization whose mission is to assure the safety and well-being of the public and advance the professional practice of acupuncture through the establishment and promotion of national, evidence-based standards of competence and credentialing.[2] NCCAOM is the only national organization that validates entry-level competency in the practice of acupuncture and Oriental medicine and it is widely accepted as the most influential leader in certification and testing for acupuncture and Oriental medicine in the nation.[3]

NCCAOM pursues its goals through detailed educational, ethical, and examination requirements. This includes a Master-level degree from an educational institution accredited by the Accreditation Commission for Acupuncture and Oriental Medicine ("ACAOM"), which itself requires in excess of 1900 hours of coursework, completion of a qualified apprenticeship program requiring, among other things, at least 3,000 patient contact hours, or a

---

[2]     *History and Overview*, Nat'l Cert. Comm'n for Acupuncture and Oriental Med., http://www.nccaom.org/about/history.
[3]     *About Us Home*, Nat'l Cert. Comm'n for Acupuncture and Oriental Med., http://www.nccaom.org/about/ about-us-home.

1550122.1

combination of the two.[4]  Additionally, applicants for NCCAOM certification must take and pass a series of examinations.[5]

Ninety-eight percent of all states that regulate the practice of acupuncture, including Texas (s*ee* 22 Tex. Admin. Code § 183.4(a)(5)), require NCCAOM examinations or full certification as a prerequisite for licensure.[6]  There are currently in excess of 17,000 certified NCAAOM diplomates throughout the United States, including approximately 768 actively practicing in Texas.[7]  Texas acupuncturists can also meet their continuing acupuncture education requirements by completing NCAAOM approved courses.  22 Tex. Admin. Code § 183.20(b)(1)(D).

Historically, acupuncture derives from traditional Chinese medicine.  It began to become popularized in the United States at some point after President Richard Nixon's visit to China in 1972.  Its use as an alternative form of medicine became sufficiently widespread that, today, it is regulated in some form in most states, including Texas.  The sole mission of the NCCAOM is to establish, assess

---

[4]     2015 NCCAOM Certification Handbook, pp. 4, 18, 20, 22-26-31.The Certification Handbook is readily available and accessible on the NCAAOM's website at http://www.nccaom.org/applicants/handbook-and-applications.

[5]     *Id*. at p. 20.

[6]     *History and Overview*, Nat'l Cert. Comm'n for Acupuncture and Oriental Med., http://www.nccaom.org/about/history.

[7]     *State Licensure Requirements*, Nat'l Cert. Comm'n for Acupuncture and Oriental Med., http://www.nccaom.org/regulatory-affairs/state-licensure-map.

3

1550122.1

and promote recognized standards of competence and safety in acupuncture and related Oriental medicine for the protection and benefit of the public.

## II. THE LEGISLATURE'S TRAINING AND REGULATORY REQUIREMENTS FOR THE PRACTICE OF ACUPUNCTURE SHOULD DETERMINE THE OUTCOME OF THIS APPEAL

The statements in the TBCE's brief to the effect that, in interpreting relevant statutory provisions, this Court does not or should not give consideration to the public health risk of persons practicing acupuncture without sufficient training, have no merit whatever. (*See* TBCE Br. 41-42.) In the view of the NCCAOM, just the opposite is true: it is the training and regulatory requirements that the Texas Legislature has explicitly seen fit to apply to the practice of acupuncture that should dictate the outcome of this appeal.

This case involves the proper construction of language in two provisions of the Texas Occupations Code, section 205.001(2) of the Acupuncture Chapter and sections 201.002(a)(3) and (b)(2) of the Chiropractors Chapter. The proper construction, in turn, requires application of Chapter 311 of the Government Code, otherwise referred to as the Code Construction Act. *See* Tex. Occ. Code § 1.002 (applying Chapter 311 to the Occupations Code). Chapter 311 sets forth multiple factors to be considered when a court is engaging in statutory construction. As an initial matter it creates a basic presumption for the enactment of any statute that "a just and reasonable result is intended" and that the "public interest is favored over

4

any private interest." Tex. Gov't Code § 311.021(3), (5).  With respect to actually construing a statute, Chapter 311 then authorizes courts to consider not only the "legislative history," but also the "consequences of a particular construction" and other "laws on the same or similar subjects."  *Id*. § 311.023(3), (4), (5).

The NCCAOM, of course, agrees with the TAAOM concerning the legislative history of the amendments to section 205.001(2).  *See* TAAOM Op. Br. 9-12.  With due consideration for "laws on the same subject," moreover, the NCCAOM fails to see how the amendments to the ***Acupuncture Chapter*** could possibly have any bearing whatever on the scope of chiropractic when the Acupuncture Chapter explicitly states that it does not apply to other health care professionals licensed under another statute of the state and acting within the scope of the license.  Tex. Occ. Code § 205.003(a); *see also id*. (Medical Practice Act) § 151.052(a)(3).  Aside from those preliminary points, however, the public interest presumption, consideration of the "consequences" of the TBCE's proposed statutory construction, and other relevant factors require that such construction be rejected.

The training and regulatory standards for the practice of acupuncture that the TBCE brushes aside as irrelevant, provide the starting point for the proper statutory analysis.  The following chart summarizes some of the disparities that result in the practice of acupuncture in Texas under the TCBE's interpretation:

5

|  | Acupuncture Requirements for Acupuncture Practitioners | Acupuncture Requirements for Chiropractors |
|---|---|---|
| **1. Texas Occupations Code** |  |  |
|  | **Acupuncture training hours:** <br><br> 1800 instructional hours at a reputable acupuncture school. Tex. Occ. Code § 205.206(a)(1) | **Acupuncture training hours:** <br><br> No instructional hours for acupuncture specified. Education is left entirely to the TBCE. Tex. Occ. Code § 201.1525 |
|  |  |  |
|  | **Acupuncture training subjects:** <br><br> Training must include instruction in acupuncture meridian and point locations. Tex. Occ. Code § 205.206(a)(3). | **Acupuncture training subjects:** <br><br> No instruction in acupuncture meridian and point locations required. |
|  |  |  |
|  | **Continuing education:** <br><br> Continuing education as determined by the TBAE.[8] § 205.255. | **Continuing education:** <br><br> No continuing education in acupuncture required. |
|  |  |  |
|  | **Oversight of board** <br><br> The TBAE acts pursuant to the advice and approval of the Texas Medical Board. Tex. Occ. Code § 205.101(a). | **Oversight of board** <br><br> The TBCE has no board or agency providing oversight. |
|  |  |  |

---

[8]    Texas Board of Acupuncture Examiners.

1550122.1

| 2. Texas Administrative Code | | |
| --- | --- | --- |
| | **Acupuncture accreditation:**<br><br>Graduation from acupuncture school accredited (or candidate for accreditation) by the ACAOM.[9] 22 Tex. Admin. Code §§ 183.2(2), 183.4(4). | **Acupuncture accreditation:**<br><br>No accredited acupuncture school training required. |
| | | |
| | **Acupuncture training hours:**<br><br>The ACAOM in turn requires 1905 hours (105 semester credits) for any acupuncture program, or 2625 hours (146 semester credits) for any oriental medicine program including acupuncture, as reflected on the NCCAOM website.[10] | **Acupuncture training hours:**<br><br>100 hours training "in the use and administration of acupuncture" by a chiropractic school *or* an acupuncture school. 22 Tex. Admin. Code § 78.14(b)(1)-(3), (d). *See also* entry directly below. |
| | | |
| | **Acupuncture exam:**<br><br>Successful taking of the NCCAOM exam, following compliance with the eligibility requirements shown directly above. 22 Tex. Admin. Code § | **Acupuncture exam:**<br><br>Successful taking of the NBCE[11] exam *or* the NCCAOM exam. The NBCE exam requires as a prerequisite only "100 hours of instruction in acupuncture" from a |

---

[9]  Accreditation Commission for Acupuncture and Oriental Medicine.
[10]  *See* http://www.nccaom.org/applicants/eligibility-requirements.
[11]  National Board of Chiropractic Examiners.

1550122.1

| | | |
|---|---|---|
| | 183.4(a)(5) | chiropractic college, as reflected on the NBCE website.[12] |
| | | |
| | **Clean needle training:**<br><br>Successful taking of the CCAOM[13] clean needle technique course and practical examination. 22 Tex. Admin. Code § 183.4(a)(6). | **Clean needle training:**<br><br>None required. |
| | | |
| | **Continuing education:**<br><br>17 hours of continuing acupuncture education required each year, with at least 8 hours dedicated to "overall acupuncture knowledge, skills, and competence." 22 Tex. Admin. Code § 183.20(b). | **Continuing education:**<br><br>None required in acupuncture. |
| | | |
| **3. College/University Requirements** | | |
| | **Acupuncture course instruction:**<br><br>American College of Acupuncture[14]: 20 required semester credits (330 total hours) of acupuncture *classroom* instruction (*i.e.*, in | **Acupuncture course instruction:**<br><br>Parker University[16]: "Doctor of Chiropractic Catalog" does not reference acupuncture as part of required curriculum, and mentions |

---

[12]      *See* http://mynbce.org/prepare/acupuncture.

[13]      Council of Colleges of Acupuncture and Oriental Medicine.

[14]      The American College of Acupuncture & Oriental Medicine is located at 9100 Park West Drive, Houston, Tex.

8

| | | |
|---|---|---|
| | addition to clinical training, *see* entry below) for degree leading to acupuncture license.[15] | it in passing as a "continuing education" course.[17] The university's 2015-16 Academic Catalog lists only one acupuncture course, of 32 total hours.[18] |
| | | |
| | **Acupuncture clinical training:**<br><br>American College of Acupuncture: 30 required semester credits (1020 total hours) of clinical training for degree leading to acupuncture license.[19] | **Acupuncture clinical training:**<br><br>Parker University: none referenced in the "Doctor of Chiropractic Catalog" for acupuncture. |
| | | |

As plainly illustrated above, the TBCE's proposed interpretation of the Acupuncture Chapter amendments creates a severe statutory inconsistency in standards for acupuncture as between licensed acupuncturists and chiropractors, in violation of virtually every rule of statutory construction.

---

[16] Parker University School of Chiropractic is located at 2540 Walnut Hill Lane, Dallas, Tex.

[15] *See* 2015-16 Catalog of, at: https://acaom.edu/attachments/Catalog.pdf, pp. 16-18.

[17] *See* http://parker.edu/wp-content/uploads/2014/09/Doctor-of-Chiropractic- Catalog-2014-2015.pdf, pp. 38, 65-67.

[18] See http://parker.edu/admissions-aid/course-catalogs-handbook/, p. 237.

[19] *See* 2015-16 Catalog of the American College of Acupuncture & Oriental Medicine, located at 9100 Park West Drive, Houston, Tex., at: https://acaom.edu/attachments/Catalog.pdf, pp. 16-18.

1550122.1

**A.    No Intention to Reduce Training Standards Applicable to the Practice of Acupuncture Appears in the Legislation or Its History**

Returning for a moment to legislative history, no evidence exists of record that, in amending the Acupuncture Chapter, the Texas Legislature at any time evaluated the adequacy of training of chiropractors to perform acupuncture in a clinical setting. No inference therefore can arise from the amending language that the Legislature intended to expand the scope of chiropractic in such a manner as to nullify the generally applicable training standards already in place for the practice of acupuncture in Texas. Just to be clear, the issue from a legislative history perspective is not whether the Legislature *could have* decided to apply one set of acupuncture training standards to apply to persons licensed under the Acupuncture Chapter, and a much lower set of standards to apply to persons licensed under the Chiropractors Chapter, if it had used more precise or comprehensive language. Rather, the issue is whether the Legislature, through the sparsely-worded "circuitous" legislation enacted (TBCE Br. 29), actually accomplished that result. Given the carefully-designed scope of training the Legislature has required for the practice of acupuncture for decades, the TBCE's argument that the amendment altered the training requirements for certain practitioners of acupuncture is nonsense.

10

**B. No Intention to Eliminate Texas Medical Board Regulatory Oversight Appears in the Legislation or Its History**

Construing the amendment to section 205.001(2) of the Acupuncture Chapter as opening up the practice of acupuncture to chiropractors not only creates a huge disparity in the training applicable to different categories of acupuncture practitioners. It also removes the acupuncture profession from the oversight of the Texas Medical Board. Guidance and input from the Texas Medical Board has always been an important aspect of the practice of acupuncture in Texas, lending expertise, professional standards, and credibility to the profession. Thus, the Texas State Board of Acupuncture Examiners ("Acupuncture Board"), by statute, includes two physician members; the Acupuncture Board's powers and duties are exercised only with the "advice and approval" of the Texas Medical Board; all rules promulgated by the Acupuncture Board must be approved by the Texas Medical Board; and licensed acupuncturists remain within the overall jurisdiction of the Texas Medical Practice Act. *See* Tex. Occ. Code §§ 151.052; 205.001(7), (8); 205.051(a)(2); 205.101(a), (b).

The TBCE and its chiropractic licensees, by contrast, operate entirely outside the Medical Practice Act and independent of licensed physicians and the Texas Medical Board. *See* Tex. Occ. Code §§ 151.052(a)(3); 201.051, 201.151, 201.152. No legislative history, and certainly no express legislative amendments, provide a basis for concluding that the kind of radical change in regulatory

11

oversight for the acupuncture profession as advocated by the TBCE, has been accomplished.

### C. The TBCE's Position Creates Disharmony by Producing Disparity in Standards Applicable to Acupuncture Practice

The inconsistency in acupuncture training and regulatory oversight standards that result from the TBCE's proposed interpretation undermines one of the very principles of statutory construction on which it relies to justify its position. The TBCE contends that the "nonsurgical, nonincisive" language from the Acupuncture Chapter (§ 205.001(2)) and the "nonsurgical, nonincisive" language from the Chiropractors Chapter (§ 201.002(b)(2)) should be read *in pari materia* with a view to "harmoniz[ing]" the two chapters. (TBCE Br. 26-29.) The doctrine of *in pari materia*, as the TBCE notes, has the purpose of "harmonizing" statutory provisions that appear in different statutes "if possible." *See Burke v. State*, 28 S.W.3d 545, 546-47 (Tex. Crim. App. 2000) (quoting case) (cited by TBCE, p. 26). The TBCE's interpretation, however, does just the opposite: it creates a major rift between two chapters of the Occupations Code with respect to training and regulatory requirements for the practice of acupuncture. Adopting the TBCE's proposal thus does nothing at all to achieve harmony and, in fact, violates the very purposes of the *in pari materia* doctrine.

12

Of course, other considerations also require the rejection of the TBCE's *in pari materia* analysis. The three cases it cites illustrate the point as well as any. (*See* TBCE Br. 26.) In each of them, the court rejected application of the doctrine because the statutes involved had different purposes. *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407 (Tex. App. – Dallas 2010, pet. denied) (holding that "architect" as appearing in the Civil Practice Code and as appearing in the Occupations Code would not be construed *in pari materia* light of the different purposes of the two codes); *In re J.M.R.*, 149 S.W.3d 289, 294 (Tex. App. – Austin 2004, no pet.) (holding that "trespass" as contained in the Penal Code and as contained in the Education Code had different meanings and purposes); *Burke*, 28 S.W.3d at 548-49 (finding that the term "assault" as appearing in different sections of the Penal Code "don't apply to the same class of people, were designed to serve different purposes, appear in different chapters of the Code, and were not apparently intended to be considered together").

Similarly, here, the Acupuncture Chapter and the Chiropractors Chapter of the Occupations Code have very different purposes. One regulates licensed acupuncturists with input from the Texas Medical Board. The other regulates licensed chiropractors through a stand-alone regulatory authority. The two do not overlap in any material way. The references to chiropractic in the Acupuncture Chapter, for example, are limited to referrals that an acupuncturist might treat for

13

specified conditions. *See* §§ 205.301(a)(2), 205.302(a). The fact that the Legislature contemplated that a chiropractor might make referrals to an acupuncturist, in and of itself, suggests an intention to maintain a separation between the two professions. The Chiropractors Chapter, by comparison, makes no reference at all to acupuncture.

In sum, the two chapters in the Occupations Code have different purposes and are not an appropriate subject for application of the *in pari materia* doctrine. If the doctrine were nevertheless to be applied, the TBCE's approach of focusing on isolated words should be rejected because it results in greater disharmony between the chapters, not greater accord. Greater accord is achieved only by limiting the practice of acupuncture to the standards set forth in the Acupuncture Chapter.

### D. The TBCE's Proposed Interpretation Contravenes the Public Interest

Finally, no conceivable public health interest will be served by the application of widely disparate training and regulatory standards to, on the one hand, acupuncture as practiced by licensed acupuncturists, and, on the other, acupuncture as practiced by chiropractors. The Medical Practice Act reflects the Legislature's long-standing finding that the regulation of the "practice of medicine" is "necessary to protect the public interest." Tex. Occ. Code § 151.003.

14

That interest is only served by consistently high standards of practice. One federal court in Texas observed as follows:

> Th[e] right of a State to regulate under its police powers all aspects of the practice of medicine and thereby help provide for the general health and welfare of its citizens is of such vast importance as to approach the status of a duty. Nothing is more fundamental than the rights of the various States to furnish the people competent health services and as a direct corollary to this right they have a corresponding duty to carefully prescribe minimum requirements for the licensing of those administering medical and surgical services. ***This is a highly specialized field of experts daily dealing with the very lives of the citizenry and the State must, therefore, insure as best it can the competency of these experts***.

*Garcia v. Tex. State Bd. of Med. Examiners*, 384 F. Supp. 434, 437 (W.D. Tex. 1974) (emphasis added).

As mentioned earlier, the practice of acupuncture in Texas remains subject to the Medical Practice Act and, unlike chiropractic, is included within the "practice of medicine." *See* Tex. Occ. Code § 151.052(a)(3) (excluding chiropractic).[20] The TBCE's position, which results in significantly relaxed standards for chiropractors, creates a two-tiered approach to the practice of acupuncture. In doing so it violates the public trust not just by lowering standards but also by permitting acupuncture to be practiced by persons outside the practice of medicine. As noted by one Texas court:

---

[20] "Practicing medicine" is defined in the Act to include "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or physical deformity or injury by any system or method . . . by a person who . . . directly or indirectly charges money or other compensation for those services." Tex. Occ. Code § 151.002(13).

1550122.1

We hold that it is properly within the power of the [Texas Medical Board] to regulate acupuncture as the practice of medicine. In our opinion the State of Texas and the [Medical Board] *would betray their public trust to permit unlicensed persons to practice medicine*.

*Thompson v. Texas State Board of Medical Examiners*, 570 S.W.2d 123, 130 (Tex. App. – Tyler 1978, writ refused n.r.e.) (emphasis added).

A disparity in education and training requirements is a common consideration when passing upon issues related to regulation of the healing arts. For example, in Gandee v. Glaser, 785 F. Supp. 684, 686-87 (S.D. Ohio 1992), two properly licensed hearing aid dealers challenged on constitutional grounds Ohio regulations that prohibited them from advertising themselves to the public as audiologists. In upholding application of the regulations, the court found that it would be deceptive and misleading for the hearing aid dealers to hold themselves out as audiologists because of the vast differences in the educational requirements associated with each title. Id. at 689. In particular, the only qualifications for a **hearing aid dealer** under the regulations were that the person "be at least 18 years of age, of good moral character, free of contagious or infectious diseases, and . . . pass an examination specified and administered by the hearing aid dealers and fitters licensing board." Id. at 690. In contrast, licensed **audiologists** were required to have a college degree with least 60 hours of college-level coursework devoted to "the normal aspects of human communication, development and disorders thereof," complete at least 300 hours of supervised clinical experience,

16

and obtain at least nine months of professional experience with a minimum of 30 hours of clinical experience per week. Id. at 690-91. Under these circumstances, according to the court, allowing hearing aid dealers to use the term "audiologist" to describe themselves "**is likely to materially deceive or mislead consumers as to the dealer's educational level**" and "it is likely that consumers would find the educational level of such an individual an important consideration." Id. (emphasis added).

Other similar holdings include *Lucas v. Maine Comm'n of Pharmacy*, 472 A.2d 904, 907 (Me. 1984) (holding that licensing board evaluating reciprocity application properly considered "educational requirements as one critical measure to compare the competency required for original pharmacist registration" as between the two states); *Howe v. Smith*, 199 A.2d 521, 525 (Pa. 1964) (holding the "significant difference in the education and training required" between the practice of medicine and the practice of chiropractic justified state regulatory agency from rejecting physical fitness certificates completed by chiropractors).

The reasoning of *Gandee* applies directly to the reasonableness of the interpretation of the amendments in section 205.001(2) of the Acupuncture Chapter. Construing the amendments as creating a two-tiered qualification system for persons administering acupuncture treatment results in not just a likely endangerment of the public health and safety, but also a deception of the public

17

with respect to the credentials and education of those providing the treatment. No such intention should be attributed to the Legislature. *Perez v. City of Laredo*, 82 S.W.3d 605, 608 (Tex. App. – San Antonio 2002) (stating that "a court must consider the consequences that would follow from its construction of a statute and avoid absurd results"). The only reasonable interpretation, and the one consistent with the public interest, is that the amendments provide no authority whatever for non-licensed acupuncturists to practice acupuncture.

## CONCLUSION

In the NCCAOM's view, the risk to the public health interest arising from diminished training and regulatory standards in the practice of acupuncture is not just a concern, but the major concern in this Court's construction of the amendments to section 205.001(2) of the Acupuncture Chapter. The Texas Legislature and Texas Medical Board appear to have taken these concerns into account when setting the specific educational and training requirements for a person to become licensed in acupuncture. Construing the amendments to authorize chiropractic practice of acupuncture is inconsistent with the educational and regulatory regime already well-established for the practice of acupuncture. Such a construction also disfavors the public interest and results in a major disparity as between the Acupuncture and Chiropractic Chapters.

1550122.1

The trial court judgment therefore should be reversed.

Respectfully Submitted

By: */s/ Don R. Sampen*
One of the Attorneys for NCCAOM

Don R. Sampen
Mark J. Sobczak
Clausen Miller, P.C.
10 S. LaSalle St., 16th Fl.
Chicago, IL  60603
312-606-7803

19

**CERTIFICATE OF COMPLIANCE**

Amicus Curia NCCAOM certifies that this amicus brief (when excluding the caption, identity of parties and counsel table of contents, index of authorities, signature, proof of service, and certificate of compliance) contains 3,762 words.

*/s/ Don R. Sampen*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 20, 2015, the foregoing Corrected Brief of Amicus Curiae National Certification Commission for Acupuncture and Oriental Medicine was served via electronic service on the following:

Joe H. Thrash
Assistant Attorney General
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711
Joe.Thrash@texasattorneygeneral.gov

Craig T. Enoch
Melissa A. Lorber
Shelby O'Brien
Enoch Kever PLLC
600 Congress Ave, Suite 2800
Austin, Texas 78701
cenoch@enochkever.com
sobrien@enochkever.com

*/s/ Don R. Sampen*

1550122.1